## THE PEOPLE *ex rel.* Francis H. Duff, *vs.* SAMUEL BOOTH, mayor of the city of Brooklyn.

The granting or refusing of the writ of mandamus, is a matter of discretion. To entitle a party to that remedy, there must be a clear legal right, not merely to a decision in respect to the thing, but to the thing itself.

Where it is doubtful whether a person in whose favor a warrant is drawn upon the treasurer of the city of Brooklyn, by the comptroller, is entitled to the money, there being another claimant, who has sued the city therefor, the mayor is not obliged to sign the warrant; and cannot be compelled to do so, by mandamus.

There is nothing in the charter of the city, or in the general statutes of the state, authorizing the comptroller to adjudicate the question of title to the money, in such a case; and the mayor is not controlled by his action, and bound to sign the warrant as a mere ministerial act.

The People *v.* Booth.

APPEAL from an order made at a special term, denying a motion for a mandamus, to compel the defendant, as mayor of the city of Brooklyn, to sign a warrant issued by the comptroller in favor of the relator, for money claimed to be due him from the city as surviving partner of John F. Barrett, deceased.

An affidavit of the relator was presented to a justice of this court, setting forth the following facts, viz : That he was the surviving partner of the firm of John F. Barrett and Francis H. Duff ; that in the latter part of March, 1865, he entered into partnership with the said J. F. Barrett, in the work to be done under the contract which said Barrett had obtained from the city of Brooklyn, for repairing streets of said city for the western district thereof, and became at that time and from thence until now, he has been and is now jointly interested with said John F. Barrett in said contract, and the work done thereunder, and the money due thereon ; that at the time aforesaid, the deponent and the said John F. Barrett, entered into a general partnership to do the work under said contract, and also to do jobbing work for private parties, and continued to work together under said agreement, which was by parol, until the death of said John F. Barrett, which took place on the 4th day of November, 1865 ; that the deponent had contributed at different times, between the time of making such agreement and the death of said Barrett, in cash, the sum of about $1500, which said money was used by Barrett in paying the men and buying horses and tools used in said business, and for feed for the horses used in said work ; that Barrett during his lifetime always collected the money due from the city upon said contract, as the work progressed, collecting in all from said city, seven payments under said contract, each payment being monthly payments ; that on or about the first day of September, 1865, the said John F. Barrett signed the following paper, and delivered the same to the deponent :

"I hereby certify that Francis H. Duff, of the city of

Brooklyn, is jointly interested with me in the contract which I have with the city of Brooklyn for repairing the streets of the city of Brooklyn W. D., said contract bearing date March 15, 1865, and that he is joint owner with me in six horses and carts, and six setts of harness used in the work under said contract, and that he is jointly interested with me and entitled to one half of the money due from the city of Brooklyn on said contract, and also that he is general partner with me, and jointly interested in all jobbing and work done by me, either under said contract or with private parties.

[Five cent revenue stamp.]    (Signed,)    JOHN F. BARRETT."

That all the money the deponent ever received from said partnership, or on account of the money due under said contract, was the sum of $700. That there is due to him from said partnership, on account of said contract, and the work done thereunder and for job work done by said partnership, more than the amount of money coming from said city for work under said contract, and that said Barrett received in his lifetime more than the amount of his share of the money due under said contract; that said contract expired March 15, 1866; that there is due to the deponent, as surviving partner of said John F. Barrett, deceased, from said city of Brooklyn, five monthly payments under said contract, to wit, from October 15, 1865, to March 15, 1866, amounting in all, including the thirty per cent kept back until final payment, to $7679.39; that after the completion of said contract the deponent made out bills for said five monthly payments in his name as surviving partner of John F. Barrett, deceased, and presented the same to the street commissioner of the city of Brooklyn for certification; that said street commissioner attached thereto his certificate that the work was completed, and that there was due the contractor the said sum of $7679.39, whereupon the deponent presented said bills and said certificate to Mayor Booth for approval; that his honor

indorsed his approval thereon, under advice of the corporation counsel, as stated by him in his approval ; that thereupon the deponent presented said bills so certified and approved to the auditor of the city of Brooklyn, who, on the 16th day of July, 1866, audited the same and attached his certificate thereto ; that thereupon said deponent presented the said bills, certified, approved and audited as aforesaid, with the certificates attached thereto, to the comptroller of the city of Brooklyn, and demanded the money thereupon ; that said comptroller issued his warrant, dated July 16, 1866, directed to the treasurer of the city of Brooklyn, directing him to pay to Francis H. Duff, surviving partner of J. F. Barrett or order said sum of $7679.39 ; that thereupon the deponent presented said warrant to his honor Mayor Booth, for his signature, when his honor the mayor declined to sign the same, and that it is necessary to obtain such signature thereto, before he can obtain said money.

On reading this affidavit, an order was granted, directing the defendant to show cause why a mandamus should not issue, to compel the defendant as such mayor, to sign the warrant issued by the comptroller of the city of Brooklyn to said relator, as stated in his affidavit.

On showing cause at special term, an affidavit of the defendant was read, setting forth the following facts, viz :

That he, the defendant, refused to sign the warrant mentioned in the order issued herein, because Francis H. Duff, the person to whom the same is drawn, was not entitled to the sum named therein from the city of Brooklyn, or to any part thereof ; that he is not the surviving partner of John F. Barrett, deceased, and never was a partner of said Barrett. That said Duff has no claim upon any moneys due upon the contract of said Barrett, referred to in his affidavit ; and that the partnership agreement thereto attached and referred to, was never signed by said Barrett, as the deponent verily believed. That the executor and legal representative of said Barrett denies that said Duff was ever a partner of said deceased, or

interested in the contract aforesaid, or entitled to any money due thereon, and claims the money for which the said warrant mentioned in said order was drawn, and had, some time before the making of said order, commenced a suit in the city court of Brooklyn, to recover the same from the city of Brooklyn, claiming to be the only party interested therein, or entitled thereto. That at the time the said warrant was presented to the defendant for signature, the counsel of the city was preparing the necessary papers for an application to said court, to have said Duff substituted in the place of said city, in said action, as the defendant therein, which papers have since been served upon said Duff, being a notice of motion for such substitution and affidavit according to the form required by law. That the certificate of the auditor to the bills of said Duff, for which the said warrant was issued, and the said warrant, were issued by arrangement with said Duff, and against the advice of the legal adviser of said auditor and comptroller, as officers of the said city, and for the purpose of preventing the city from having an adjudication by a competent court, as to which of said claimants, the executor of said Barrett aforesaid, or said Duff, was entitled to the sum due upon said contract, before the payment thereof to said Duff, who is wholly irresponsible and of no pecuniary means. That the defendant, in his capacity of mayor and head of the city government, having investigated the circumstances connected with the claim of said Duff and the action of the said subordinate city officer thereon, did discover the facts and circumstances to be as above stated. That said comptroller and deponent had, and have no authority to issue or sign the warrant referred to. That the common council of said city has never ordered the payment of the money for which said warrant is drawn, and such warrant was issued without authority of said common council, and not in pursuance of an order of said council. That the bills aforesaid have never been approved by the mayor of said city, or certified by the street commissioner ; that deponent has never

approved of the same ; and that the allegations in the affida-
vit of said Duff, that the said bills were approved by him were
untrue.

An affidavit of J. Oakley Nodyne, the street commissioner,
was also read, denying that he had certified the bills of said
Duff, for and on account of which the warrant was drawn,
and alleging that the statement in the affidavit of said Duff,
that the said bills were certiffed by the street commiss·oner
of said city were untrue.

Other affidavits were also produced and read by the de-
fendant, among which was that of the executor of Barrett,
in which he claimed the money, as belonging to the estate
of Barrett, and denied that the relator was entitled to the
same.

The motion for a mandamus was denied, and the relator
appealed.

*Crooke & Bergen,* for the appellant.   I. The warrant was
issued upon bills duly certified by the street commissioner,
approved by the mayor, audited by the auditor, and presented
to the comptroller in due form of law.

II. The duty of the mayor, in signing the warrant, is
purely a ministerial act, and he has no discretion.   (*Lynch*
v. *Livingston,* 2 *Seld.* 422.)   It is only necessary that he
should sign the warrant, because the charter provides, (*title 3,*
§ 15,) that "no money shall be drawn or paid out of the
treasury, except in pursuance of such orders appropriating
the same, and upon warrants signed by the mayor, or acting
mayor, and comptroller, and countersigned by the city clerk,
or, in his absence, by his assistant."   1. The mayor has no
discretion about it ; he is given none by the charter ; he can-
not supervise the action of the auditor or comptroller ; it lies
entirely with them, to pass upon the validity of the claim,
and their action is *res adjudicata.*   2. The charter expressly
provides : " He (the comptroller) shall also, under the direc-
tion of the common council, prepare the annual statement

hereinbefore directed to be published, *and manage all the financial concerns of the corporation,* in addition to such duties as may be required of him by law." (*Title* 3, § 13.) He may appoint a deputy comptroller, for whose acts he shall be responsible. " He may administer an oath to any person or officer who shall be required to render any account, or make any return to him, or furnish proof of his right to receive any sum of money, or any evidence of indebtedness from the said comptroller, or from the city of Brooklyn." His duties here are clearly judicial in their nature, and are *res adjudicata.* 3. Title 3, section 17, of the charter, provides, in respect to the auditor : " It shall be his duty to examine all bills presented against the city for payment. No claims against the city, or for local improvements, or otherwise however, shall be paid, unless he shall certify the same to have been incurred under the authority of law, and that the services have been rendered, or the materials furnished, for which such bills may be presented, and that the charges are just and reasonable, or according to contract ; he may require the oath mentioned in section 12 of this title, and may administer the same." We submit that his duties are clearly judicial in their nature, and are *res adjudicata.* The mayor is given no such power or authority. The charter simply provides that the warrant, which shall be issued by the comptroller, upon such proof and certificate, shall be signed by him. 4. The comptroller is the financial officer of the city, and is only responsible to the common council of the city for his acts. (*a.*)˙ The charter, (*title* 2, § 13, *subd.* 1,) provides, the common council shall have power " To manage and regulate the finances and property, real and personal of the city." (*b.*) Title 3, § 13, provides that the comptroller shall, *under the direction* of the common council, manage all the financial concerns of the corporation. The mayor has no control over him. Again, title10, section 1, prescribes that the accounts of the city and management of its finances shall be under the direction of the

comptroller of said city, subject to the provisions of this act, and to the ordinances of the common council.

III. The writ lies to command an elected officer to discharge all the duties belonging or annexed to the office. (*Tapping on Mandamus,* 238, *and cases cited.*)

IV. The only question before this court is whether, after a claim has been properly certified and audited, and a warrant for the money issued by the proper financial officer of the city, the comptroller, the mayor has a right to refuse to sign the warrant. We submit that he has not, and that a peremptory mandamus should issue to compel him to sign the warrant.

V. The charter, title 3, § 15, expressly says, that the warrant shall be signed by the mayor, *or acting mayor,* &c. Thus showing, that the act of signing the warrant is purely ministerial, as it may be done by the acting mayor as well as by the mayor. (*See Lynch* v. *Livingston,* 2 *Seld.* 422.)

VI. It is well settled that a mandamus is the appropriate remedy, and will lie to compel the defendant to sign the warrant. In the case of *McCullough* v. *Mayor, &c. of Brooklyn,* (23 *Wend.* 461,) Judge Bronson says : " Although, as a general rule, a mandamus will not lie where the party has another remedy, *it is not universally true,* in relation *to corporations and ministerial officers.* Notwithstanding they may be liable to an action on the case for neglect of duty, they may be compelled, by mandamus, *to exercise their functions according to law.*" And the court held a mandamus to be the proper remedy in that case. Again, in the case of *The People* v. *Steele,* (2 *Barb.* 418,) Judge Edmonds says : " It is well settled that as to corporations and ministerial offices, the existence of another and an adequate remedy is no objection to awarding this writ." (*See also The People* v. *Flagg,* 17 *N. Y. Rep.* 588, *Comstock, J.*) The charter, (*title* 11, § 120,) as amended 1862, provides : " The city of Brooklyn shall not be liable in damages for any non-feasance or misfeasance of the common council, *or any officer of the city,* or appointed

by the common council, of any duty imposed upon them, or either of them, by titles 4 and 5 of this act, *or of any duty enjoined upon them, or any or either of them, as officers* of government, by any other provision of this act, but the remedy of the party, or parties, aggrieved for any such non-feasance or misfeasance, shall be by mandamus, or other proceeding or action, to compel the performance of the duty." Now, this is a duty enjoined upon the defendant, as mayor of the city of Brooklyn, to sign this warrant, and the charter itself prescribes the remedy upon refusal.

VII. The case of *The People ex rel. Green* v. *Wood,* (35 *Barb.* 653,) is relied upon as authority for denying this motion. That was an appeal from an order made at special term, in New York, granting a peremptory mandamus against Mayor Wood, to compel him to sign a warrant drawn by the comptroller of New York, for money under a contract, and was decided entirely upon the provisions of the charter, and ordinances, of the city of New York, which differ in many material respects from the charter and ordinances of Brooklyn. That case was decided upon the principle that a mandamus was not the remedy ; that he had his action at law, and that only the city could resort to this remedy to compel its officers to act. This principle does not apply here, because the charter of Brooklyn, as amended in 1862, expressly takes away the right of action, and substitutes the proceeding by mandamus. A large portion of the opinion of Judge MULLIN, in that case, was *obiter,* and so stated to be by him. It was conceded, in that case, that the work for which the money was claimed had never been performed ; while, in this case, it is conceded that the work has been performed, and that the money is due.

*John J. Schumaker,* for the respondent. I. The relator is not in a position to compel the mayor by mandamus to sign the warrant herein, by the special provisions of the charter.

1. Warrants can only be issued for the payment of money in pursuance of orders made by the common council. (§ 15, *title* 3, *city charter.*) In this case the relator does not allege that any such direction has been made, and no such order in fact has been had. 2. The bills of the relator have not been approved by the mayor, or certified by the street commissioner, as required by the charter, section 8, title 6, (*Laws of* 1865, *p.* 1440.) This is also an essential prerequisite to the issuing of a warrant for their payment. Both the mayor and street commissioner swear positively that they have not approved and certified the bills.

II. This proceeding is substantially directed at the city of Brooklyn and its treasury. The mayor is the nominal party only. It is simply an attempt to collect a disputed claim or debt by mandamus "for which object this writ was never designed." (*People* v. *Thompson,* 25 *Barb.* 73.) The affidavits show that Duff is not entitled to the money. That there is another claimant who is entitled to it—not only his right is not a "clear legal right," but that another party is absolutely entitled to the money. The relator has also an adequate remedy at law, by the commencement of a suit. But not even this is necessary, as the affidavits show that a suit has already been commenced against the city by the other claimant, and the city has moved to have the relator substituted in its place. The mandamus therefore will not lie, on general principles. 1. Because the relator has not a "*clear legal right*" to the money. (*People* v. *Supervisors of Chenengo,* 11 *N. Y. Rep.* 563. *People* v. *Ransom,* 2 *id.* 490.) 2. Because the relator has an adequate remedy by action and interpleader. (*See cases above cited and Judge Beardsley's brief in first case,* 1 *Kern.* 568.)

III. It is expressly held that the mayor should refuse to sign or countersign a warrant when he thinks the payment improper and unjust, and that in the event of his refusal the parties must resort to action, and that a mandamus will not

lie ; and that he can be coerced by mandamus only when there has already been some adjudication on the claim presented. (*People ex rel. Green* v. *Wood, Mayor of N. Y.* 35 *Barb.* 653. *See also* § 11, *title* 3, *city charter, and* § 2, *art.* 2, *ch.* 1, *of city ordinances.*)

IV. The result of the issue of a mandamus herein would be to compel the payment, without trial or adjudication of the right of the opposite claimant, of over $7000 from the city treasury, to a person not a party to any contract with the city—the payment of an alleged claim which is wholly disputed, and which to say the least has a very strong flavor of fraud.

*By the Court,* GILBERT, J. Upon the evidence disclosed by the affidavits, it is, at least, doubtful whether the relator is entitled to the moneys for which the warrant was drawn ; and I am constrained to say that I can find nothing in the papers before me which made it the duty of the comptroller to draw the warrant in favor of the relator. The contract was with Barrett. He is dead. *Prima facie* his legal representatives are entitled to the money due from the city. The relator claims that he was a partner, and produces a certificate to that effect, alleged to have been signed by Barrett. This is denied, by disputing the genuineness of the signature of Barrett to the certificate, and other facts. It further appears that the executor of Barrett has sued the city to recover the money for which the comptroller drew the warrant in favor of the relator. I can find nothing in the charter of the city, or in the general statutes of the state, authorizing the comptroller to adjudicate the question of title to this money.

The action of the street commissioner related only to the doing of the work, and that of the auditor related only to the legality of the employment and the amount of the bills. These certificates had no effect upon the right to receive the

money. The question, therefore, is whether the mayor was controlled by the action of the comptroller and was bound to sign the warrant as a mere ministerial act. I think not. The argument of the counsel for the relator would be applicable if the question related only to the amount, because the mayor would be bound by the determination of the officers to whom the statute had confided the specific power on that subject; but the power of determining a litigated claim against the city has not been vested in the comptroller, or of any of the city officers, to the exclusion of the mayor, and it is very clear that a statute making such a determination binding on the representatives of Barrett would be void.

The provision of the charter is that no money shall be drawn or paid out of the treasury except upon warrants signed by the mayor, or acting mayor, comptroller, and countersigned by the clerk. It is contended that the power conferred upon the comptroller to manage the financial affairs of the corporation and administer oaths to persons presenting claims against it is exclusive in its nature, and that the mayor is vested with no discretionary check in respect to payments out of the city treasury, but is under a legal obligation to sign every warrant which has the signature of the comptroller. I cannot assent to this. On the contrary, I think the mayor has the power, and that it is his duty to take care that no money is drawn out of the treasury except in pursuance of law. In the present case, the appropriate remedy is by action against the corporation. The mayor, I think, had the power, and properly exercised it in refusing to sign the warrant in question; but if I am wrong on this point it does not follow that the relator is entitled to the writ of mandamus. The granting or refusing the writ is a matter of discretion, and under the facts of the case I think it ought to be refused. For, as was said by Judge EMOTT, in *The People* v. *The Contracting Board,* (27 *N. Y. Rep.* 381,) to entitle a party

to this remedy, "there must be a clear legal right, not merely to a decision in respect to the thing, but to the thing itself."

The writ is refused ; the order to be entered at three days' notice.

[KINGS GENERAL TERM, February 11, 1867. *Lott, J. F. Barnard* and *Gilbert,* Justices.]