The State, ex rel. Wells, v. Marston.

THE STATE, *ex rel.* WELLS, v. MARSTON, AND OTHERS, COMMISSIONERS OF NEOSHO CO.

1. MANDAMUS—TITLE OF ACTION—*Party in interest—Practice.* Under the Code of Civil Procedure the action of mandamus, like other civil actions, should undoubtedly be brought and prosecuted in the name of the party in interest, as plaintiff, and not in the name of the State.

2. CANVASSING VOTES—*Ministerial act, not Judicial.* The action of the County Commissioners in canvassing the returns of a county-seat election is ministerial, and not judicial.

3. CONTESTING ELECTION—MANDAMUS—*Rights and Remedies—Chapter 27, Laws of 1869, construed.* If, after a canvass of the votes, an alternative writ of mandamus is allowed against the County Commissioners to compel them to hold their offices at the place shown by the canvass to be the county-seat of their county, said Commissioners may set up as a defense to said writ, fraud and illegality in said election; and chapter 27 of the laws of 1869 does not take away the right of the County Commissioners to set up said defense.

4. MANDAMUS, WRIT OF—*Discretion of Court.* The writ of mandamus lies to a great extent within the discretion of the court where the application is made.

5. ELECTION—CANVASS NOT CONCLUSIVE—*Powers of Court.* Questions properly submitted to the people are to be determined by the votes of qualified electors, and not by a mere canvass of votes cast. Courts in all proper cases should, and in any case may, go behind the canvass and examine into the validity of the election.

6. ILLEGAL AND FRAUDULENT VOTES—*Canvass—Mandamus refused.* When more than one-half of all the votes claimed to have been polled at a county-seat election, and which were canvassed and counted by the County Commissioners, were illegal and fraudulent, and where the people of the town, in favor of which the writ of mandamus is asked, are responsible for a large proportion of the illegal voting, the writ of mandamus will not be allowed, unless a clear right thereto, beyond all reasonable doubt, is made out.

*Original Proceedings in Mandamus.*

PROCEEDINGS to determine the validity of a county-seat election, and to compel the defendants, *Solon E. Marston, George W. Gabriel, and Israel Stoddard,* as commissioners of the county of Neosho, to move their records and keep their office at the town of Erie, the alleged county-seat of said county.

The record shows that an election was held on the 9th of June, 1868, for the location of the county-seat; that at such election there were 1117 votes cast in the whole

county, of which 543 were in favor of the town of *Erie*, 572 in favor of *Mission Town*, and two in favor of Osage Mission—giving Mission Town a plurality of 29; that the then board of county commissioners, composed of Thomas Jackson, James M. Allen, and M. A. Patterson, acting as a board of county canvassers to canvass the said votes, rejected and refused to count the votes returned from the township and precinct of Mission, for the reason "that the "judges and clerks of said election precinct were not "sworn according to law, and that several illegal votes "were cast at said election precinct;" that by the rejection of said returns, said commissioners declared that the town of *Erie* had received a majority of the votes cast, and was the county-seat of the county, and that the county offices and records were held and kept at said town of Erie; that subsequently one Joseph L. Roycraft commenced proceedings in mandamus in the Neosho County District Court against said Jackson, Allen, and Patterson, the then commissioners, to compel a recanvass of votes, and said court, on the hearing of the case, in June, 1869, gave judgment granting a peremptory writ of mandamus, commanding said commissioners to recanvass the votes cast at said election held June 9th, 1868, and to count the returns by them previously rejected; that from such judgment said Jackson, Allen and Patterson appealed to this court.*

In February, 1870, *Joseph A. Wells*, the relator, filed his petition or relation in this court, alleging that *Erie* was duly chosen and designated as the county-seat of said Neosho county at the said election held June 9th, 1868,

[* NOTE 1.—THE cause so appealed to this court, (and which is the same cause mentioned in the defendants' answer in this case,) was not tried here; but the judgment of the District Court was on the 28th of July, 1870, *affirmed*, under RULE 4 of this Court; (5 Kas., 10.)—REPORTER.]

and the canvass of votes cast thereat; ‡ and alleging also
in substance, that " on the 10th day of November, 1869,
" there having been no county buildings erected, donated
" or purchased at the county-seat, of any value or descrip-
" tion, three-fifths of the legal electors of said county
" presented their petition to the board of county commis-
" sioners, praying for an election for *the re-location* of the
" county-seat; that said county board thereupon ordered
" an election for the re-location of the county-seat of
" said Neosho county; that such election was held on
" the 14th of December, 1869, due notice of which was
" given as required by law; that at such election the
" towns of Erie, Osage Mission, and Worcester were the
" places voted for; that no place having received a ma-
" jority of the votes cast at such election, said board of
" commissioners ordered another election, which was
" held December 28th, 1869; * that on the Saturday fol-
" lowing said second election said board of commissioners
" met and canvassed the votes thereof; that at such elec-
" tion, as shown by said canvass, the vote stood, for Erie
" 2587; for Osage Mission 1965; that Erie was at this
" election chosen the county-seat by a majority of 622 of
" the legal electors of said county, and that said result
" was duly proclaimed and declared by said board of

[ ‡ NOTE 2.—No mention is made in said petition of the rejection by the commissioners
of a portion of the votes cast, nor of the proceedings in mandamus in the District Court.]

[ * NOTE 3.—At the general election held November 2, 1869, the defendants in *this*
cause, *Marston, Gabriel, and Stoddard*, were chosen County Commissioners of Neosho
county, for the term commencing Monday, January 10th, 1870. It will be observed that
the *petition* for a " relocation " of the county-seat, (mentioned in *Well's* petition or rela-
tion in this case,) was presented to the *old* board of commissioners, and that the elec-
tions were ordered by them and held for such purpose after the *new* board of commis-
sioners were chosen, but before the commencement of their term. It will be observed
also, that the first official act of the *new* board, (the defendants in *this* action,) was to
*recanvass* the votes cast at the election of June 9th, 1868, (pursuant to the judgment and
order of the District Court before mentioned,) and to declare *Mission* the county-seat—
thus entirely ignoring the elections held December 14th and 28th, 1869.—REPORTER.]

"commissioners." Said petition of said *Wells* further averred, "that on the 10th day of January, 1870, the "county records of said Neosho county were in the "county offices at *Erie;* that on said day the defendants "*Marston, Gabriel and Stoddard,* duly entered upon the "duties of their office as county commissioners; that on "the night of the 12th of January, the said *Marston,* "*Gabriel, and Stoddard,* as said board of county commis- "sioners, caused the said county records to be surrep- "titiously and clandestinely carried and removed from "said town of *Erie* to the town of Osage Mission, and "there canvassed or pretended to canvass, at a meeting "held by them on the 13th of January, 1870, the votes "cast at the election which had been held on the 9th of "June, 1868, and falsely declared that by said vote that "Mission was the county-seat of said county." Said petition further showed that since said canvass the county records had been kept, and the county business transacted at *Mission;* that *Wells,* the relator, was beneficially inter- ested in having the county offices kept at *Erie,* and pray- ing that an alternative writ of mandamus be awarded commanding said defendants to remove their records and the county offices to Erie, or show cause, etc. The writ was granted, and served.

The defendants *Marston, Gabriel* and *Stoddard* showed cause. Their answer sets forth in detail the holding of the election of June 9th, 1868; the canvass of a portion of the votes and rejection of a portion cast thereat; the pro- ceedings in mandamus in the district court, at the instance of Roycraft; the appeal to this court—and alleged that the actions and proceedings on the part of the then board of commissioners, Jackson, Allen and Patterson, in refusing to count and canvass the said votes, in refusing

to obey the order and judgment of the district court, and in appealing therefrom to this court, were fraudulent and corrupt; and were done and performed solely to thwart the will of the people and to defeat the ends of right and justice; that the pretended "petition of three-fifths of the electors" of said county, presented to the county board November 10th, 1869, was false and fraudulent; that the " order" for the election of December 14th, 1869, was not made by the said board of commissioners at a legal session, but was a verbal order only, made by two of said commissioners, Jackson and Allen, at an illegal so-called special session; that the election held on the 28th of December, 1869, was a fraud and a farce; that at said election 1117 votes were pretended to be cast in said town of Erie, for said town of Erie for the county-seat, " when in truth and " in fact said town and township of Erie did not then " contain more than 200 legal voters;" " and that no re " turns or poll-books whatever were made from said " township and voting precinct of Erie." Said defendants further alleged that the said Jackson, Allen and Patterson, as commissioners, and the relator *Wells*, had conspired together in June, 1868, to hinder and defeat the will of the people; that the making of the illegal canvass and rejecting of the votes cast at the election held June 9th, 1868—the refusing to obey the order and judgment of the district court—the appeal to the supreme court—the pretended petition for another election, and the two elections of December 14th and 28th, 1869, were all brought about by said conspiracy, and in pursuance thereof. The defendants also denied that Erie was at any time the legal county-seat of said county—alleged a legal canvass by the defendants, *Marston, Gabriel and Stoddard*, of the votes cast at the election of June 9th,

1868, and that the town of Mission was the legal county-seat, and claimed that they of right held their office and kept the county records at said town of Mission.

After said return or answer to the alternative writ was filed, the parties appeared and the case was set down for hearing upon the issue joined upon said writ and answer. Said issue was tried before the court at the July Term, 1870; a large number of witnesses were called and testified on each side; but it is not deemed necessary to state what facts were established thereby beyond what appears in the opinion of the court.

*L. Stillwell,* and *McComas & Danford,* appeared for the relator, and submitted the following propositions:

1. The real parties to this suit are the people of Osage Mission and Erie. The relator and the defendants are mere nominal parties.

2. The election held by order of the Board of County Commissioners on the 28th December, 1869, was *for the purpose of locating* the county-seat. Upon a canvass of the returns of that election as made by the judges of the election, the board of commissioners decided and pro-claimed *Erie* to be the county seat.

The only way for the parties against whom that decision was made to question the validity of the vote upon which it was made is a contest of the election under chapter 27 of the laws of 1869.

The cases where mandamus has been maintained to contest county-seat elections in Iowa and Wisconsin, are based upon the absence of statutes in those states giving the party any other remedy; while in Ohio where there is a statute, from which our act of 1869 was copied, a

different rule has been laid down by the courts. The case of *Peck v. Weddel*, 17 Ohio, 272, sustains this view. We call the attention of the court to the language of Scott, J., pages 283, 284, where he says, that the proceeding by contest is a much more likely way to reach the real justice of the case and give effect to the will of the people than a proceeding of this character. He shows that by the proceeding under the statute the party aggrieved has an "adequate remedy."

The result of that vote and canvass was to make Erie *de facto* the county-seat; to make at least a *prima facie* case for Erie. The proclamation of the result of the election was equivalent to the certificate of election given to a candidate. Could any person at the Mission have maintained mandamus against any of the county officers at Erie for not holding their offices at the Mission after the result of this election was declared? Certainly not; because they had another remedy in the due course of law, under the act of 1869. *The People v. Hand*, 25 Ill., 325; *Crowell v. Lambert*, 10 Minn., 375. The principle decided in these cases, and that involved in the one now under consideration, is the same.

When the commissioners decided that Erie was the county-seat, as the result of that election, it was the duty of the county officers to hold their offices there until some competent judicial tribunal decided that the majority of the legal votes were cast for some other point. This is not an appeal from the decision of a board of canvassers, but it is a proceeding to compel the officers to hold their offices as county officers at the place where the board of canvassers proclaim that the legal electors have located the county-seat. They must hold their offices at such place until some other point is decided *de jure* to be the

county-seat. The supreme court of Iowa decided that the county judge must *look to the records* to decide *where his office is to be held*. 13 Iowa, 140.

The supreme court of New York decides that "when an office is held by one who is sworn in under color of right, (that is, has a certificate of election,) a mandamus is never issued to admit another person," though he may be legally elected: 20 Barb., 302. Why? because such person has another adequate remedy.

3. The giving of the party agrieved *another remedy* does not oust the court of its jurisdiction. It only does away with the necessity of interfering by mandamus.

Mandamus is an extraordinary writ, and issues only to supply a remedy where there is none. Then, if the persons who are interested in having Osage Mission the county-seat could not, after the election of Dec. 28th, 1869, have maintained a writ of mandamus against the county officers to make them move their offices away from the *de facto* county-seat, to some point which they allege is *de jure* the county-seat, *a fortiori* they cannot effect the same thing in this suit, indirectly, by alleging the same facts in their answer. This would be to allow them to take advantage of their own wrong. It would say to the people of Mission, "You cannot contest this election by mandamus; but if you can produce a *hegira* of the records from Erie, have them turn up at the Mission, cause the commissioners to move down and hold their officers there, you have so changed the circumstances of the case that you may contest the election in a proceeding in mandamus, take advantage of your own wrong, retain the county-seat thus obtained, thus doing indirectly what you could not do directly, and this too,

though the statute gives you another remedy." This we do not believe is law.

4. If the evidence satisfies the court that there was in fact an election held which resulted in favor of Erie, the result of which was proclaimed and entered of record, then all the evidence tending to impeach the validity of the said election, should be excluded from the consideration of the court, and the peremptory writ be awarded. *The People v. Hand,* supra.

*John O'Grady,* and *Ross Burns,* appeared and tried the case as counsel for the defendants, but filed no brief.

The opinion of the court was delivered by

VALENTINE, J.: This is an application for a peremptory writ of mandamus to compel the defendants, who are the County Commissioners of Neosho County, to hold their offices at the town of Erie, which is claimed to be the county-seat of said county.

I. The title of this action under our present code, (that of 1868) is probably wrong. It should be Joseph A. Wells plaintiff, instead of "The State of Kansas, on the relation of Joseph A. Wells, plaintiff." The remedy of mandamus is now wholly under the code of civil procedure—chapter 80, art. 33, Gen. Stat. of 1868. Under said code there is but one form of action, called a "civil action;" (§ 10.) "The party complaining shall be known as the *plaintiff,* and the adverse party shall be known as the defendant;" (§ 11.) "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided," etc.; (§ 26.) The statutes do not anywhere *otherwise* provide; that is, they do not anywhere provide that an action of *mandamus*

*[margin note: 1. MANDAMUS, title to action; party in interest; practice.]*

may be prosecuted in the name of the State when prosecuted by a private individual. The party prosecuting in such an action is always called the "plaintiff" in said code, and never the relator; (§§ 695, 697.) The adverse party in such an action is always called the "defendant" in said code, and never the respondent: (§§ 690, 693, 695.) After the writ and answer in an action of mandamus, the other proceedings are conducted in the same manner as any other civil action; (§ 696.) And, "if judgment be given for the plaintiff *he* shall recover the *damages* which *he* shall have sustained, to be ascertained by the court or jury, or by referees, as in other civil actions, and costs;" (§ 697.) But, as no question has been raised on this point, we will pass it without further consideration.

II. The main object of this action is to have the court determine whether the town of Erie, or the town of Osage Mission, is the county-seat of Neosho county. At the commencement of this action an alternative writ was issued; afterwards the defendants answered, and the action was then tried upon the said writ and answer. Many questions were raised in this case which we do not consider of sufficient importance to notice in this opinion—some being raised during the trial, and some before the trial.

The plaintiff founds his claim that Erie is the county-seat of Neosho county, upon a certain election held in said county on the 28th day of December, 1869. The returns of their election were duly canvassed by the then board of county commissioners on the 1st day of January, 1870; and as a result of said canvass the commissioners declared that Erie was the county-seat. According to that canvass, Erie received 2,587 votes; Osage Mission, 1,965 votes; total, 4,552 votes—the majority for Erie

being 622 votes. The present board of commissioners of said county refuse to recognize the validity of said election, and also claim that even if said election was valid, Osage Mission received a majority of the legal votes.

It is in evidence before us, that at the time of said election the whole number of legal voters in Neosho county was only about 1700—887 voters less than are said to have voted for Erie—265 voters less than are said to have voted for Osage Mission, and but little more than one-third as many as are said to have voted for both places; and showing that there were about 2,852 illegal votes cast at that election. The principal frauds were perpetrated at Erie and Osage Mission, and in Lincoln township, or rather in Lincoln township. After the election, and before the canvass of the voters, the poll-books were tampered with, and many new names were fraudulently added to the list of voters in said poll-books.

The first question that we shall consider is, whether this court has the power under the law, to go behind the said canvass of the county commissioners, and allow these frauds to be shown. It will be admitted by the plaintiff, that the action of the county commissioners in canvassing said election returns was purely ministerial, and not judicial: (2 Ind., 23; 14 Mich. 362; 14 Barb., 259; 30 id., 588; 8 N. Y. 67; 15 Ill., 492; 1 Dutch., (N. J.,) 354; 4 Wis., 420, 567; 7 Iowa, 186, 390; 10 Mo., 629;) and therefore that their action is not final or conclusive, but may be inquired into directly or collaterally, unless chapter 27 of the laws of 1869, (page 101,) prohibits the same from being done. Before the passage of that act, the power of the supreme court

*2. Canvass of votes—ministerial—not judicial.*

was ample in the premises; but by its passage it is contended, that said power was taken away; not by express words however, but indirectly, as is claimed by plaintiff's counsel. Their reasoning upon the question is substantially as follows: *First:* in an action of mandamus neither party can set up any claim or defense for which he has another plain and adequate remedy; *second*, the defendants in this case are electors of said Neosho county; *third*, said act gives to any elector of the county, for the space of twenty days after the election, a right to contest any county-seat election; therefore, these defendants had another "plain and adequate remedy," and therefore they cannot set up the defense of fraud in this election, but must abide the result of the canvass. This reasoning is defective in several particulars. *First:* The proposition that neither party can set up any claim or defense, for which he has another plain and adequate remedy, does not apply with the same force to the defendants in an action of mandamus, as it does to the plaintiff. *Second:* The defendants in this case are not sued simply as electors, but are sued as county commissioners; it is asked to compel them to perform an act, not as individual electors, but as public officers, representing all classes of the community, whether such classes are electors or not. *Third*: The said act gives only twenty days in which to commence the proceeding to contest the election; and if the election has been carried by fraud, and the fraud not discovered for more than twenty days, or if the election is invalid for any other reason, and the cause of invalidity has not been discovered for more than twenty days, the party desiring to show the invalidity has really never had any adequate remedy under the statute; and after

3. Contest of elections; mandamus. Act of 1869 construed.

the twenty days have elapsed, no person, whether he be an elector or not, has any remedy of any kind under the statute. With respect to the second proposition, we may further remark, that said chapter 27 * gives to the county commissioners *a right* to contest a county-seat election; and from this fact it is inferred that said act takes away the right of such elector to question the validity of such an election in *any other* manner. But this reasoning fails when it comes to be applied to such persons as are not electors of the county; for instance, persons owning real estate in the county, or otherwise interested in the county, and who are beneficially interested in a particular place being the county-seat, but who are women, or minors, or persons disqualified from voting under section two (as amended,) of article five of the constitution, or perhaps are non-residents of the county. It will hardly be claimed that the act of 1869 takes away the right of such persons to question the validity of a county-seat election, except by contest under that act; for if it does, then such persons will have no remedy at all. It seems to us, that it will be conceded that county commissioners represent all classes of society, whether such classes be voters or not; and if they do, then it must be conceded that whenever they are sued as county commissioners, whenever they are sued for the purpose of compelling them to perform some official act, they may set up any defense that any class or person whom they represent could set up were such class or person the defendant. It will hardly be claimed that one person may legally compel the county commissioners to perform

[ * SAID Chapter 27, Laws of 1869, (p. 101,) is repealed, and a different rule and practice prescribed, by chapter 79, Laws of 1871, p. 190; and said act of 1871, (passed since this case was decided,) requires proceedings upon mandamus to be in the name of "The State of Kansas, upon relation," etc., as plaintiff.—REPORTER.]

an act which another person may legally prohibit them from doing.

III. But aside from this, the writ of mandamus lies to a great extent within the discretion of the court where 4. Writ of mandamus; discretion of court. the application is made: *People, ex rel. Duff, v. Booth,* 49 Barb., 31; *People, ex rel. Hackley, v. Cr. Ag. Board,* id., 259; *People, ex rel., v. Canal Board,* 13 id., 450; *Ex parte Flemming,* 4 Hill., 581, 583; *Fish v. Weathwax,* 2 Johns. Cases, (2d Ed.,) 217, note, § 4, and cases there cited; *Van Rensselaer v. Sheriff of Albany Co.,* 1 Cowen, 501, 512; *People, ex rel., v. Solomon,* 51 Ill.; Moses on Mand., 18; Bacon Abr., *Mandamus, (E;)* 1 T. R., 331, 396, 425; 2 T. R., 336; *People v. Hatch,* 33 Ill., 17, 133, 140; 2 Redf. on Railw., 258.

Originally the writ of mandamus was a prerogative writ, solely within the discretion of the court; and it still so far partakes of its original nature, that the court may exercise a considerable degree of discretion in granting or refusing it, and in hearing evidence for and against it.

Admitting, for the purposes of this argument, that the court will ordinarily refuse to go behind the canvass of the board of canvassers, yet whenever it can be shown that the result of the canvass was procured through fraud 5. Canvass not conclusive; courts will inquire into the election itself. in the election, the court would not only go behind the canvass, but it would be its duty to do so; it would be an abuse of judicial discretion not to do so. The court should exercise enough of judicial discretion in such cases to prevent any litigant from obtaining through a fraudulent election what in justice he has no moral right to have. It is our opinion that, in all actions like this, courts generally should, and in all cases may—exercising a sound judicial discretion—

go behind the canvass of the election returns, and examine for themselves into the validity of the election.

IV. The next question for us to consider is, whether Erie, or Osage Mission, received a majority of the legal votes cast at said election. This question is surrounded 6. Where writ of with great and perplexing difficulties. The
Mandamus re-
fused. commissioners canvassed and counted 4,552 votes. Of these, according to the evidence, only about 1700 were legal, and 851 were a majority of the same. Of the votes canvassed and counted, 2852 were illegal and fraudulent. But suppose that there were 2,000 or 2500 legal votes cast, (and this is probably more than any one will claim,) and still the question would not be relieved of much of the embarrassing difficulties that encumber it; for still there would be 2500, or 2,000 illegal votes. Each place received legal votes; and each place received many illegal and fraudulent votes. But how many of each, each place received, cannot be determined with any degree of accuracy. Whether we are bound in this case, under the circumstances, to determine the question, is, to say the least, very questionable. We think we are not bound to do so. Courts were established principally for the protection of innocence and justice, and not for the protection of supposed rights, founded upon fraud and injustice. Courts will investigate to the very foundation, and examine to the utmost extent, every question of law and of fact, and every circumstance connected with a case, so as to do justice to the innocent and deserving. But when two parties (and we do not intend to apply this to the immediate parties in the case, but to the towns of Erie and Osage Mission,) who have both by their fraudulent and wrongful acts put vast obstacles in the way of justice, and encumbered the case

with embarrassing difficulties, invoke the aid of courts, the courts will not feel very much inclined to assist either to a very great extent, and especially not in an action of mandamus where so much rests in the discretion of the court. · Courts will seldom in such cases weigh the claims of the parties in golden scales, and give a decision on a bare preponderance of evidence. The right of a party in such a case, if he expects a decision, should be clear, beyond all reasonable doubt. Neither party in this action has made a clear case. Neither party has shown a clear right, beyond a reasonable doubt, to the county-seat of Neosho county; and neither party is in a condition to demand, as a matter of right, anything from this court; and therefore we shall leave the parties where we found them. If the people of Neosho county had no other speedy and adequate means of determining where their county-seat should be, we would probably in our discretion, be willing to determine the question now presented to us on a bare preponderance of the evidence; but even then we should be very reluctant to say that any rights could accrue under such an illegal and fraudulent election as the one now under consideration seems to have been. But as the people can soon determine by a legal election where their county-seat shall be, (Gen. Stat., 296,) we shall leave the question entirely with them.

The peremptory writ of mandamus is refused.

All the Justices concurring.