THE STATE OF KANSAS, *ex rel.*, &c., v. THE BOARD OF COMMISSIONERS OF ANDERSON COUNTY.

TOWNSHIP BONDS; *Election not Ordered; Mandamus Refused.* Where a petition is presented to the board of county commissioners for the pur-pose of having the board order an election in a certain township, for the purpose of having the question determined, whether the electors of the township will authorize a subscription to the capital stock of a certain railroad company, and authorize the issue of township bonds in payment for such stock, and it appears that at the time the petition is presented, a question is pending, whether, or not, the township shall be divided into two townships, and the county commissioners refuse to act upon the petition for the election until after the question whether the township shall be divided, or not, shall be settled and determined, *held,* that the supreme court will not order a peremptory writ of mandamus to be issued to compel the county commissioners to order such an election, until the question of the division of the township is finally settled and determined.

### *Original Proceedings in Mandamus.*

ACTION brought in this court February 22, 1882, by *The State of Kansas,* on the relation of the attorney general, against the *Board of Commissioners of Anderson County.* The object of the action, and the facts, sufficiently appear in the opinion.

*W. A. Johnston,* attorney general, for plaintiff.

*L. K. Kirk, A. Bergen,* and *J. S. Whitford,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of mandamus, brought originally in this court in the name of the state of Kansas, on the relation of W. A. Johnston, attorney general, to compel J. B. Rhodes, N. J. Reynolds and Otto F. Fabricius, as the board of county [commissioners of Anderson county, Kansas, to order an election in Walker township, in said county, to determine the question whether the electors of that township will authorize the subscription of $25,000 to the capital stock of the Fort Scott, Topeka & Lincoln rail-

road company, and authorize the issue of that amount of the
bonds of the township in payment for such stock.    An al-
ternative writ of mandamus was issued, and the defendant,
by way of return and answer to the writ, set up four defenses.
A trial was had in this court on April 4, 1882; and upon
the pleadings and evidence, we find in favor of the plaintiff
and against the defendant upon all the defenses, except the
fourth, and upon that defense we find in favor of the de-
fendant and against the plaintiff.    The fourth defense is sub-
stantially as follows:  On December 26, 1881, a petition was
filed in the county clerk's office for a division of said Walker
township into two townships, by a line running east and west,
the northern township to contain about fifteen square miles,
and the southern township to contain about thirty square
miles; the northern township to retain the name of " Walker,"
and the southern township to be named " Union."

The time for the hearing of this petition by the board of
county commissioners was fixed for April 12, 1882, and proper
notice was given to that effect.    The petition for calling an
election in said Walker township, and submitting to the qual-
ified voters of said township the proposition to subscribe
$25,000 to the capital stock of the Fort Scott, Topeka &
Lincoln railroad company, and to issue the bonds of the
township to such railroad company, was presented to the
county commissioners on February 13, 1882; and as the
question whether the township should be divided, or not, was
then pending, the county commissioners refused to call the
election in Walker township for the purpose of determining
the proposition whether such stock should be subscribed for,
and such bonds issued, until the question whether the town-
ship should be divided, or not, should first be settled and
determined by the board.    It is probable that the county
commissioners might legally and properly have ordered the
election at once; but we think it was entirely proper for them
to postpone the consideration of the question until the other
question, as to whether they should divide the township, or
not, should first be disposed of.    If the township should be

divided, then it is possible that the interests of the two townships would not be identical; it is possible that the railroad would not be beneficial to one or to the other of the townships; and it is possible, also, that one or the other of the townships might not wish to subscribe to the capital stock of the railroad company, and issue bonds in payment for such stock, and thereby become involved in debt for something which the township might possibly regard as of no value. It is true, that the commissioners might have so called the election as to make it take place prior to April 12, 1882, and before the township could be divided. But if they believed that in the end and on that day the township must be divided, we think they exercised a sound discretion in refusing to order the election at that time. At the time, however, when this case was submitted to us, an election could not have been so called or ordered that it would take place prior to said April 12, 1882; for, as we have before stated, the case was not submitted to us until April 4, 1882; and the law requires that at least thirty days' notice shall be given of such election after the election is ordered and before it takes place. The 12th of April, 1882, is now past; and whether the township has been divided, or not, we do not know, judicially. Outside of the case, however, we know that in fact it has been divided; but that those who opposed the division claim that the division is illegal and utterly void. These questions we cannot settle in this case. All that we can do in this case is to decide the case upon the alternative theory, that the township either may, or may not, be divided, without knowing which. If the township is legally divided, then it is possible, and even probable, that no valid election could be called upon the present petition. The law requires that no township shall be allowed to issue evidences of indebtedness to the extent of more than $15,000, and five per cent. additional of the assessed value of the property of such township; and in no case shall the total amount of township aid to any railroad company exceed $4,000 per mile for each mile of railroad constructed in the county. (Comp. Laws 1879, pp. 792, 793, § 1.)

And before any election can be called for the purpose of authorizing aid to a railroad company, at least two-fifths of the resident tax-payers must petition the county commissioners for such an election.

Now can any one say that all these conditions have been fulfilled, as to each or either of these townships into which Walker township may have been divided? And if Walker township has been so divided, in which of the two townships should the election be held; or should it be held in both? And if it should be held in only one, then have two-fifths of the resident tax-payers of that township petitioned for such an election? And is the sum of $25,000 not more than $15,000 and 5 per cent. additional of the assessed value of the property of such township? These questions cannot be answered from the pleadings and evidence presented in this case. Besides, there are other questions which must eventually be answered: If Walker township has been divided into two townships, then which one of the two is the old township, and which the new? Or are they both new? And can a new township be created with less than thirty square miles? (Comp. Laws of 1879, p. 277, § 24.) The northern township has the larger population, and is allowed to retain the old name; but the southern township has the larger area—and what is there in a name?

With all these difficulties in the way, this court thinks that no peremptory writ of mandamus should be issued to compel the board of county commissioners to call an election, even if we should be of the opinion that we have the authority to allow the writ. Exercising a sound judicial discretion, we think we ought to refuse the writ; and that this court has a degree of discretion in allowing or refusing writs of mandamus, has been frequently held by this court, as well as by other courts. Among other cases, see *The State v. Marston,* 6 Kas. 524, 537, and cases there cited; *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson County,* 12 Kas. 136; *Golden v. Elliot,* 13 Kas. 92; *The State v. Breese,* 15 Kas. 125.

The peremptory writ of mandamus will be refused in this

case, and judgment will be rendered in favor of the defendant and against the plaintiff, for costs.

All the Justices concurring.