## THE FARMERS BANK OF MARYLAND *vs.* JAMES IGLEHART.— *December*, 1847.

*A.* devised the dividends in certain bank stock to his widow for life, with remainder to his children, and appointed *D.*, one of his sons, executor. He assented to the bequest, paid the dividends to his mother, and assigned his interest to *J.* Before the assignment, *D.* was indebted to the bank. The stock remained in the name of the testator, after the widow's death. The assignee, *J.*, applied to the bank to permit *D.* to transfer the stock assigned to him. The debt of *D.* not being paid, the bank refused. *Held*, that as by the charter of this bank, all debts actually due to it by a stockholder offering to transfer, must be discharged before such transfer be made, the bank was not obliged in this case to permit the transfer.

The assignee of *D.* was precisely in the predicament of his assignor, under whom he claimed as legatee.

Dealing with a stockholder of a bank, with reference to its stock, a purchaser takes an equitable assignment, subject to the rights of the bank under its charter, of which the assignee is bound to take notice.

That this was a case in which the legal title to the stock, which otherwise would have been in the executor, had become extinguished by his consent to the legacy, and vested in the legatee, *D.*, and where the assignee claimed not of the executor, but of the legatee.

Where the debt due a bank, which, by its charter, is not bound to permit a transfer of its debtor's stock, until his debts are paid, is barred by limitations at law, it does not lose its lien on the stock. The debt is not extinguished, though its remedy may be barred, and the lien follows the debt.

If the debt were extinguished, the lien would be lost.

APPEAL from the Court of Chancery.

The bill in this case was filed by the appellee against the appellant and *David Ridgely*, on the 10th May, 1845, and alleged, that *Absalom Ridgely*, by his last will, gave and bequeathed to his wife, *Ann Ridgely*, during her life, the dividends which should accrue or become due on one hundred shares of stock of the *Farmers Bank of Maryland;* and subject to said bequest, and other bequests and devises contained in said last will; in relation to other parcels of his estate, he devised and bequeathed all the rest and residue of his estate, both real and personal, to be equally divided amongst his children, *John Ridgely*, &c. That letters testamentary thereon were granted unto *John* and *David Ridgely*, the executors therein named, who possessed themselves of the personal estate of their testator, and assented to the bequests in said last will and testament, whereby your orator is advised that said *David* acquired a vested interest in remainder, expectant on the death of the said *Ann*, the widow, in one-eighth part of said stock; that the said *Ann* received the dividends on the said stock until her death, which happened in 1845; that the said *John*, one of the executors, is dead, leaving the said *David Ridgely* surviving him; that the said *David*, on the 20th July, 1829, for valuable consideration, assigned his interest in said stock to complainant by deed, who, on the death of the said *Ann*, became entitled to demand a distribution of said stock, amongst the residuary legatees aforesaid, and a transfer of one-eighth part thereof unto him as assignee of the said *David*, and your orator has accordingly required the said *David*, as surviving executor, to make distribution and transfer thereof as aforesaid; that on application at the banking-house of the *P. D.* and *Co.* of the *Farmers Bank of Maryland*, for the purpose of having a transfer made as aforesaid, your orator and the said *David* have been informed that the said *F. B.* refuses to permit any such transfer to be made, and claims and insists on a right to appropriate said bank stock to the payment of some debt or debts which said bank pretends are due and

owing from the said *David* to the said bank; that at the time of taking said assignment, he had no notice whatever of the claims now pretended by said bank, nor any cause whatever for supposing that the said *David* had not full right and authority to make the assignment to him as aforesaid; that no proceeding was ever taken by said bank, for the purpose of subjecting the interest of said *David* in said stock, to the payment of the claims now pretended against him, nor did the said bank, at, or at any time before, or for many years after the date of said assignment, notify said *David* or your orator of the existence of any lien on or claim against said *David's* interest in said stock, on account of any claim of said bank against him. And on the contrary, said stock was permitted to remain on the books of said bank in the name of said *Absalom Ridgely*, or of his executors aforesaid, without any thing which could arouse suspicion, or lead a purchaser to question the right of said executors to dispose of said stock, or of any of the legatees of said stock, to dispose of his or her interest therein; and your orator is therefore advised, that if the said bank ever had a lien or claim on said stock, which is denied, such lien or claim ought to be adjudged, lapsed or forfeited by the negligence and default of said bank as aforesaid; and that your orator, as against said bank, ought to be treated and protected as a purchaser of said interest, for valuable consideration, and without notice of the title now pretended against him. Your orator denies the existence of any debt due from said *David* to said bank, which could at any time have affected such interest as said *David* had in said stock at the date of said assignment, and if such debt ever existed, he insists, that from the laches of said bank it ought to be presumed to have been satisfied, or otherwise held to be barred by limitations.

And your orator further charges, that the estate of the said *Absalom Ridgely* was valuable, and in distributions of parcels thereof heretofore made, the sum of $1,000, described in said last will as due from the said *David* to the testator, and which is by said will directed to be treated as an advance-

ment to said *David*, has been fully accounted for and satisfied. He further charges, that some time in the year 1829, the said *D. R.* applied for and obtained the benefit of the insolvent laws, and that one *James Shaw*, then of the city of *Annapolis*, but since deceased, was appointed his trustee, and qualified accordingly ; but no trustee has been appointed since the death of the said *Shaw ;* that he is not aware of the existence of any property of said *D.* to which a trustee could entitle himself; he is advised it is not necessary for the purposes of this suit, that another trustee should be appointed.

Prayer, that the said bank may be compelled to permit the said *D.* to transfer unto your orator his just proportion of the aforesaid bank stock, and for other relief, &c.

The will of *A. R.* was exhibited with the bill, and also the assignment from *D. R.* to the complainant, viz :

For value received, this 20th July, 1829, I do hereby assign and transfer unto *James Iglehart*, all my right and interest in and to certain shares of the capital stock of the *Farmers Bank of Md.* which were devised by my late father, *A. R.* to his wife, for and during her natural life, and I do hereby bind myself to do and perform all and every act which may be necessary for the transfer of the same, whenever they may vest in me in possession. As witness my hand and seal, the day and year above written.

DAVID RIDGELY. (Seal.)

Witness, *Jas. H. Iglehart.*

The bank answered the bill, and claimed as creditor of *D. R.* to hold his interest in the stock, under its charter.

The cause was submitted to the Chancellor, on bill, answer and general replication.

It was admitted that the complainant was a purchaser for a valuable consideration, as shown by his exhibits ; that the stock mentioned in the bill continued to stand in the name of the testator until shortly after the death of the widow, *Ann Ridgely,* when seventy-three shares of said stock were trans-

ferred by the said *David Ridgely*, the surviving executor, to several of the legatees, the remaining shares standing in the name of said *Absalom Ridgely*, because of the refusal of the bank to permit a transfer thereof, and in consequence of such refusal, this bill was filed; that the exhibits filed by the *President, Directors & Co.* with their answer, are to be treated as fully proved, and as evidence of the indebtedness on the part of *D. R.* to them, as therein shewn, but this admission shall not prevent the complainant from insisting that those debts are now barred by the statute of limitations, lapse of time and laches, and that they do not show such indebtedness as the *P. D. & Co.* could have enforced, and can enforce against the bank stock in controversy, to the prejudice of the complainant; that the complainant and the *P. D. & Co.* are co-creditors of the estates of *Beale M. Worthington*, in which their claims are filed.

It is also admitted, that the complainant was a stockholder of the *Farmers Bank of Maryland*, as stated in the answer. The admission hereinbefore made of transfers of parcel of said stock, is made subject to the objection on which complainant insists, and is to be at liberty to insist that such fact is not admissible in evidence, under the pleadings in the cause.

The debt of *D. R.* to the bank originated in 1824, and judgments at law had been recovered against him.

On the 15th November, 1845, the Chancellor (BLAND) decreed that the defendant, *D. R.* as surviving executor of *A. R.* deceased, forthwith transfer on the books of the *P. D. & Co.* of the *Farmers Bank of Maryland*, unto the complainant, twelve shares of the capital or joint stock of said bank, now standing on said books in the name of the said *A. R.*; and that as soon as conveniently may be, the said defendant, *D. R.* pay unto the complainant *one-eighth part of the value or net proceeds of sale, to be made of four other shares of said stock*, the same constituting one-eighth part of one hundred shares of the said capital stock, now standing on the books of said bank in the name of the said *A. R.*

And it is further adjudged, ordered and decreed, that the

said *P. D. & Co.* of the *Farmers Bank of Maryland*, at such time or times as the said *D. R.* may require, do produce the proper transfer or other book or books of said bank, and do permit the said *D. R.* to make therein such transfer or transfers, or other entry or entries, as shall or may be proper or necessary to carry into effect this decree, with costs, &c.

From this decree, the bank appealed.

The cause was argued before ARCHER, C. J., CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By RANDALL and McMAHON for the appellants, and

By ALEXANDER for the appellees.

MARTIN, J., delivered the opinion of this court.

It appears in this case, that *Absalom Ridgely*, by his will, executed on the 14th February, 1816, and admitted to probate on the 24th August, 1818, bequeathed to *Ann Ridgely*, his wife, for life, the dividends which should accrue on one hundred shares of stock, standing in his name on the books of the *Farmers Bank of Maryland;* and subject to this bequest, and other bequests, in relation to different portions of his property, he devised the residue of his estate to be equally divided among his eight children.

It is also shown by the record, that *David Ridgely*, one of the children of the testator, as well as one of his executors, by an assignment of the 20th July, 1829, transferred his interest in the shares of stock, devised to him by his father, to the appellee for a valuable consideration, and stipulated to perform any act that might be necessary for the transfer of the stock, when it vested in him in possession by the death of the tenant for life.

*Mrs. Ann Ridgely*, the tenant for life, having died in April, 1845, an application was made at the bank for a transfer of this stock to the appellee, as the assignee of *David Ridgely*, and the bank having refused to accede to this application, claiming under their charter a lien on the stock for debts due

to them by *Ridgely*, and subsisting prior to the assignment to *Iglehart*.

This bill was filed on the 10th May, 1845, to coerce from the apellants a transfer of the twelve and a half shares of their stock, to which *D. Ridgely* was entitled as legatee, under the will of his father.

It being perfectly apparent from the pleadings and admissions in the case, and conceded by the counsel for the appellee, that in 1845, the period at which a demand was made upon the bank for a transfer of this stock, the title to it had become absolutely vested in *Ridgely*, by the assent of the executors to the legacy, and the termination of the particular estate. The principal question presented for our consideration, is, whether the appellants were authorized by the provisions of the charter incorporating the bank, to assert a lien upon the stock of their delinquent stockholder, in opposition to the equitable interest acquired by the appellee, under the assignment of the 20th July, 1829.

By the 20th section of the Act of Assembly, incorporating the *Farmers Bank of Maryland*, 1804, ch. 61, it is provided:

" That the stock of the *Farmers Bank of Maryland*, may be transferred by the holder, in person or by power of attorney, at said bank, or at the *Branch Bank* at *Easton*, but all debts actually due to the company by a stockholder offering to transfer, must be discharged before such transfer shall be made."

The power conferred upon the bank by this clause of the charter, to withhold a transfer of stock, until the proprietor and holder of the stock has satisfied all claims actually due to the company, is too clear to be questioned, and, in this respect, the predicament of the appellee is precisely that of *David Ridgely*, under whom he claims as legatee. For dealing with a stockholder of the company in reference to his stock, he is held to have taken his equitable assignment subject to the rights of the bank, under the act of incorporation, of which he was bound to take notice. *Union Bank vs. Laud,* 2 *Wheat.* 393. *Brent vs. Bank of Washington,* 10 *Pet.* 616.

We think, therefore, in this aspect of the question, the bank committed no default in refusing the transfer of the stock, as required by the appellee.

This is not the case of a bank refusing to permit an executor, who had not assented to a legacy, to transfer stock, for the purpose of executing the provisions of the will, as in *Franklin vs. The Bank of England*, 1 *Rus. Ch. Rep.* 574. But a case in which the legal title to the stock, which otherwise would have been in the executor, had become extinguished by his consent to the legacy, and had vested in the legatee; and where the appellee, who demanded from the bank a transfer of the stock in question, claimed as the assignee, not of the executor, but of *David Ridgely*, as legatee.

It was conceded that in 1845, when the bank, upon the demand of the appellee to direct this stock to be transferred, asserted its lien, the debts due to the company by *Ridgely*, were barred by the statute of limitations, and that the plea of the statute would have been a complete answer to any action that might have been instituted for their recovery in a court of law. And the counsel for the appellee has contended, that as the debts due to the bank were extinguished by the operation of the statute of limitations, the lien was necessarily lost and destroyed. If the proposition asserted by the counsel, that the debt is extinguished, be true, it would follow as a necessary consequence that the lien would be lost; for there would be no existing claim to which the lien could be attached. But this is not the rule. It is an established principle, that the statute of limitations operates only to bar the remedy, and does not extinguish the right or cause of action.

This is the language of the Court of Appeals, in *Oliver vs. Gray*, 1 *H. & G.* 216, where they say :—According to all the cases the debt is considered as not extinguished. The statute of limitations is regarded as operating upon the remedy only, and not as extinguishing the debt.

In *Brent vs. The Bank of Washington*, 10 *Pet.* 596, suits had been instituted by the Bank for the recovery of the notes, in reference to which the lien of the defendants in error was

8     v.6

asserted and maintained, and a verdict rendered for the defendants exclusively on the plea of the statute of limitations. One question propounded for the consideration of the court was, whether these claims were not extinguished, and the lien in consequence destroyed. On this question the court says: After referring to the rule announced in the *United States vs. Donnelly,* 8 *Pet.* 361, we cannot take this case out of this established rule; the legal remedy is barred, but the debt remains as an unextinguished right; and the Bank, when called into a court of equity, may hold to any equitable lien or other means in their hands till it is discharged.

In *Spears vs. Heartly,* 3 *Esp. P.* 81, a case recognized in 1831, in *Higgins vs. Scott,* 2 *Bar. & Adolp.* 413, *Ld. Eldon,* when examining this subject says: "If what has been stated by the defendant's counsel be law, that the debt is discharged by the operation of the statute of limitations, no lien could be obtained by reason of it; but the debt was not discharged, it was the remedy only; I am of opinion that though the statute of limitations has run against the demand, if the creditor obtains possession of goods on which he has a lien for a general balance, he may hold them for that demand by virtue of the lien." The same doctrine is maintained in *Higgins vs. Scott,* 2 *Bar. & Adolp.* 413, and must be considered as too firmly settled for dispute.

It follows from the views thus expressed, that we regard the decree of the Chancellor as erroneous; and a decree will be signed, reversing his decree, and dismissing the complainants' bill.

**DECREE REVERSED AND BILL DISMISSED.**