[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 98 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 100 
The certificate of stock held by Bradley was issued to him by the defendant. It was in due form, and certified that he was entitled to 200 shares in the capital stock of the defendant, transferable on the books of the defendant, in person or by attorney, on the surrender of the certificate. No limitation nor restriction of this ownership, nor of this power of transfer, was declared or suggested in the certificate. By its possession Bradley was clothed by the act of the defendant with theindicia of title. Any one buying from him in good faith, for a valuable consideration, would ordinarily, by an assignment of the certificate, accompanied by a power of attorney to transfer the stock, acquire a title to the shares and a right to have a transfer of them into his own name. (McNeil v. Tenth Nat.Bk., 46 N.Y., 325; Weaver v. Barden, 49 id., 286; Moore v.Met Nat. Bk., 55 id., 41.)
I do not understand that this, as a general rule, is disputed by the defendant. But it is claimed, that in this case the title, though there is one acquired from Bradley, is subject to a lien upon the stock in favor of the defendant. This lien is said to arise from an indebtedness of Bradley to the defendant, pre-existing his assignment of the stock to Bartlett, and that such indebtedness is made a lien by force of a by-law of the defendant, adopted theretofore, to the effect that no stock should be transferred on the books of the defendant, if the person in whose name the stock should stand should be indebted to the company. Now it may be conceded, that the by-laws of a corporation, made in pursuance of its special charter, or of the general laws under which it is organized, are binding on all members and others acquainted with the method of doing business. (Cummings v. Webster, 43 Me., 192.) It is to be gathered from the case of The Union Bank v. Laird (2 Wheat., 390), that it was there considered that the lien of a company is not waived by the form of the certificate, as where that does not indicate the existence of a *Page 102 
specific lien, or the right to a general lien; and that a person taking an equitable assignment must be subject to the rights of the company under the act of incorporation, of which he is bound to take notice. In Leggett v. Bank of Sing Sing
(24 N.Y., 283-287), some stress is put upon the fact, that the assignee knew of the existence of the lien. It is not necessary that these decisions be reconciled if they clash, or that any question which might arise upon the form of the certificate in the case in hand and its silence as to the existence of or the right to a lien, be now decided. The judgment in this case may be put upon the absence of power in the defendant to make the by-law under which it asserts a lien.
The defendant had no claim to or lien upon the stock at common law. (Mass. Iron Co. v. Hooper, 7 Cush., 183; St. Ship DockCo. v. Heron's Admrx., 52 Penn. St., 280; Sargent v. Frank.Ins. Co., 8 Pick., 90.) The reason given is, that a different rule would subvert the wholesome doctrine of the common law against secret liens. It is another rule, that every by-law made in pursuance of a general or incidental authority, must be a reasonable one. It is not a reasonable by-law, which, without authority express or to be clearly implied, interferes with the common rights of property and the dealings of third persons, and prevents the purchase and transfer or delivery of property. (TheMechanics and Farmers' Bank v. Smith, 19 J.R., 115.). It is not in subordination to the Constitution and general law of the land and the rights dependent thereon, for the reason just given. (2 Kent, 296; Dunham v. Trustees of Rochester, 5 Cow., 462.) Moreover, if the by-law is potential, it gives a summary remedy to the defendant, unknown to the law, subjecting the stock to what is equivalent to an attachment or an execution without judgment or suit. Hence, if the defendant is to maintain this by-law, it must point out the authority, either in its articles of association and show that they are authorized by law, or in some statute. (7 Cush. and 52 Penn St., 51, supra; and seeNesmith v. Wash. Bank, 6 Pick., 324; Prest. Plym. Bank v.Bank of Norfolk, 10 id., 454; Presbyterian *Page 103 Cong. v. Carlisle Bank, 5 Barr [5 Penn. St.], 345.) An inspection of the articles of association appearing in the case shows no such power to have been there conferred. It is also plain that there is no creation of such a lien in the provisions of the Revised Statutes relating to such a company as the defendant is, nor in the provisions of the general acts for the incorporation of manufacturing companies. Then if this defendant has the power to set up this lien, it is to be found only in some statutory authority to pass this by-law. The by-law of the defendant is sufficient in terms, but it is not efficient in law unless it is warranted by some statute. That is to say, it is sufficient in terms to hamper, even to prevent, the transfer of the stock held by Bradley; but it is to be observed, that it does not expressly declare a lien upon the stock in favor of the defendant, nor does it expressly assert any right in the defendant thereto. The result to Bradley and his vendee, perhaps, is the same as if it did; for if the stock may not be transferred while Bradley remains indebted to the defendant, in order to procure a transfer that indebtedness must first be paid. So that in effect, upon Bradley and those dealing with him in regard to the stock, it is the same as a declaration of a lien upon it in favor of the defendant. As to the defendant itself, perhaps it would need to take legal measures before it could avail itself of the stock to solve the indebtedness to it of Bradley.
Therefore, we may treat the by-law, for the purposes of this case, as creating a lien upon the stock in favor of the defendant, if it had legal authority to enact a by-law to that effect. It can find warrant from statute law nowhere unless in the Revised Statutes, or in the general statutes for the incorporation of manufacturing companies. By the latter statute, these companies possess the general powers and privileges contained in title 3, chapter 18, part 1, of the Revised Statutes. (Laws 1848, chap. 40, p. 56, § 26.) The power to this end, thus got from the Revised Statutes, is to make by-laws not inconsistent with any existing law, for the management of its property, the regulation of its affairs, and for *Page 104 
the transfer of its stock. (1 R.S., p. 600, § 1, sub. 6.) So far as this provision gives power to make by-laws for the management of the property of the corporation and the regulation of its affairs, it does not confer the power to make such a by-law as the defendant has enacted. Such is the result of the decision inBank of Attica v. Manuf. and Traders' Bank (20 N.Y., 501). To be sure, the decision in that case does not depend upon a construction of the provision in the Revised Statutes above given. It did depend, however, in part, upon the construction of a provision in the articles of association of the defendant in that case, which, in so far as it gave power to the directors to make by-laws for the management of its property and the regulation of its affairs, was very similar in terms. And it was held that such provision had ample scope, when confined to the affairs which the corporation, as such, is concerned in transacting for the common interest of all the stockholders; and that a by-law inhibiting any transfer of stock, unless the person making the same should previously discharge all debts due to the bank, did not relate to the government of the corporation and the management of its business. It is further asserted in the opinion in that case, that "the quality of transferability being attached to the shares, the corporate body has no authority to interfere with the disposition which any shareholder may see fit to make, except so far as such authority is conferred by the act itself, or by some general law applicable to the case." Hence we conclude that the defendant got no power to make its by-law from the Revised Statutes, unless it is contained in the power to make a by-law for the transfer of its stock. On the simple reading of this clause, we do not think that there appears in it a power to prohibit the transfer of stock; rather it seems to give power to direct the manner in which the stock shall be transferred, so that by proper regulations, while on the one hand the vendor thereof may obtain a certificate in his own name, on the other hand the corporation may have the ready means of knowing who were at any time the owners of its stock and endued with the rights and subject to the liabilities of stockholders. *Page 105 
We think that it is entirely safe to say, that the terms of this provision do not give express power to the defendant to enact such a by-law as that here relied on. Certainly the power is not specified therein, nor do we think that the existence of the power can be implied therefrom. It would be an implication, in opposition to the policy of the common law, which, as before observed, is against the existence of secret liens. It is also one in opposition to the policy of the law, in its particular dealings with this kind of property. Shares of stock are in general personal property, to be dealt with as such, and with as much freedom and ease. The right to them is a chose in action, and though not transferable, so as to give the same safety in dealing, as is given to a bona fide taker of negotiable paper, the current of authority in this State, is to the protection of the bona fide vendee, against secret or equitable claims thereto of one who has indued the vendor with the indicia of ownership. It is evident, that such a by-law as this in question, not made known upon the certificate of stock issued by the corporation, if it is to be upheld, is a very serious hindrance to the ease and safety with which sellers and buyers of shares of stock may deal therewith. It is not a by-law regulating the exercise of a right, merely pointing out or prescribing the manner in which a right may be exerted, so that protection may be mutually secured to the corporation and to incoming stockholders, but it is an abridgment, nay, it may be a destruction of a right. Now we do not assert that it is not possible to legally abridge this right. There may be power given by statute so to do. There may be, in some cases, an agreement of the original stockholders, among themselves, by their articles of association, that such power shall exist. The latter, as we have seen, does not appear in this case. The former we should expect, from the nature of the right to be affected, and the favor which that right has met with from the law, would be plainly expressed when intended to be given. Of a certainty, it is not to be implied from statutory phrases, which may have ample satisfaction, in a by-law which shall *Page 106 
regulate, without abridging, the exercise of the right. The statutory provision looks to the effectuating a transfer when the holder of the stock has found a purchaser therefor, but it enables the prescribing of such rules, as to mode, as shall guard the corporation and its actual stockholders, and those intending to become such, against imposition, while they set up no real hindrance to the transfer: such rules as may be easily complied with by persons who have satisfactorily completed their private bargain. This by-law sets up an obstacle to the transfer, unless something is done for the pecuniary benefit of a third party, not immediately concerned in the sale and purchase of the shares, which was not mutually contemplated by the parties to the sale, and which one of them is not, upon any abstract rule of justice, bound to do. We do not think that a power so to hinder the act of formal transfer, is so plain and necessary an inference from a power to effectuate that act in prudential manner, as that the one can be implied from the other. To find further power by implication from language conferring some power, the implication must be necessary, that is, presenting so strong a probability of intention as that the contrary cannot be supposed. (Wilkinson
v. Adam, 1 Ves. Beames, 422, 466.) So far is this from such a case, as that the power given by the Revised Statutes is said not to be new, and to be pre-existing as incidental. (Per NELSON, Ch. J., In re Long Island R.R. Co., 19 Wend., 37, 42.) The decision in that case goes further, and says, that when the power is taken as incidental it must be exercised in conformity to the general law of the land; that being the rule to regulate the conduct of artificial bodies, as well as of natural persons, independently of express provisions in the charter of these companies to the contrary. The general law of the land, it is hardly needful to say, gave the defendant in our case, no right to create a secret lien upon the shares of its stockholders, by a resolution or by-law of its own. (See, also, Kirk v. Nowill, 1 T.R., 118.) In the case cited from 19 Wendell (supra), it was held that a by-law was invalid, which provided for a forfeiture of stock for non-payment *Page 107 
of calls, there being no express authority therefor in the charter or other statute. We find neither express nor implied power in the Revised Statutes for the adoption of this by-law by the defendant.
The provisions of the general manufacturing act are not substantially different from those of the Revised Statutes. (Laws of 1848, chap. 40, p. 54.) The seventh section gives power to make such prudential by-laws as shall be deemed proper for the management and disposition of the stock and business affairs. The eighth section declares the stock personal property, and that it shall be transferable in such manner as shall be prescribed by the by-laws of the company. The same section then gives the power which was lacking in the case in 19 Wendell (supra), by further enacting that no share shall be transferable until all previous calls thereon shall have been fully paid in, or it shall have been declared forfeited for non-payment of calls thereon. There is no express power to create or declare a lien upon the stock by by-law, nor to refuse to permit a transfer until the indebtedness of the stockholder to the company is paid. The views we have expressed as to the provisions of the Revised Statutes are as applicable to the provisions of the manufacturing incorporation acts. We conclude that there is no express or implied power from them to pass and enforce such a by-law.
The authorities cited by the defendant from the courts of this State do not seem to us to be adverse to these views. The 20 New York we have already referred to and relied upon, and have referred to 24 New York, 283. In the first case, no power to the directors to pass such a by-law was found in the articles of association, though they used language similar in import to some of the phrases of the Revised Statutes. In the other case, the right was put expressly upon the provision in the articles of association fully giving the power, and upon the knowledge by the plaintiff of its existence. No question was there agitated, in the prevailing opinion, whether the statute law gave the power to adopt such articles. In McCready v. Rumsey (6 Duer, 574), the articles of association *Page 108 
were said by the court to be very explicit as to the existence and enforcement of the lien. That lien was for a sum due on the original subscription of the stock; and as the act under which the corporation was there formed declared that every person becoming a shareholder by transfer should, in proportion to his share, succeed to the liabilities of the prior shareholder, it was held that the act justified the provisions in the articles, and that the defendant might insist upon its lien. This was tantamount to finding in the statute express power. It is not necessary to say whether we concur in that notion; but certainly, the case, upon that basis, does not conflict with our views.Arnold v. Suffolk Bank (27 Barb., 424) when read with UnionBank v. Laird (2 Wheat., 390), is to the same effect as 6 Duer (supra). And it is to be observed that the general banking act, under which the cases in 27 Barbour and 6 Duer arose, in express terms, makes the transferees of stock subject to all the liabilities of the stockholders from whom they take. There is not that provision in the manufacturing acts nor in the Revised Statutes applicable hereto. Bates v. New York InsuranceCompany (3 J. Cas., 238) makes for our conclusion rather than against it; for there it was held that the defendant might not refuse to transfer stock by reason of the indebtedness of the prior stockholder. The point here made was not involved inGilbert v. Man. Iron Co. (11 Wend., 628), nor in Com. Bk. v. Kortright (22 Wend., 348). The appellant cites cases from other jurisdictions. In some of them, the power was found to be expressly conferred by charter. (14 Md., 271; 6 Gill, 50; 2 Wheat., 390; 10 Peters, 596.) In one of them, the decision holds only that the purchaser was affected by notice of the existence of the lien. (1 Geo., 43.) One of them (Lockwood v. Mech. Nat.Bk., 9 R.I., 308), is not in harmony with Bullard v. Nat.Eagle Bk. (18 Wall., 589), and must yield to it. Others are cases of assignees in bankruptcy or insolvency, where, of course, the plaintiffs had no greater right than the stockholders whom they represented. The cases are not applicable here. (8 *Page 109 
Sergt. R., 73; 26 Conn., 144.) Others do support the position of the appellant, but the reasoning in them does not overcome our convictions. (45 Mo., 513; 9 id., 149; 1 Harr., 27; 2 P. Wms., 207; 4 Ala. [N.S.], 652.)
A further point is made by the defendant, that the by-law was, in this case, adopted with the assent and vote of Bradley, as one of the trustees of the defendant. There are cases in which it has been held that a holder of stock is bound by a usage of the company, or by an informal regulation, made known at the time of his taking his certificate, that the company may have a lien thereon for an indebtedness; and it has been held that assignees in insolvency of such a stockholder, are also bound. (Waln v.Bk. of N. Am., 8 S. R., 73; Vansands v. Middlesex Co.Bk., 26 Conn., 144.) But no authority is cited for the further position that a bona fide purchaser of stock, without knowledge or notice of such usage or regulation derived from the contents of the certificate, or otherwise, is bound thereby. Bradley and his fellow directors or trustees, had no power to make any by-law, binding on others than themselves, as actual or intended stockholders, which was not authorized by the Revised Statutes or by the general manufacturing acts. It might be good as a contract between themselves, but not as a by-law to affect strangers, or those not consenting. (Adley v. The Whitstable Co., 17 Vesey, 316; Slee v. Bloom, 19 J.R., 456.)
We are of opinion that the judgment appealed from should be affirmed, with costs.
All concur, except RAPALLO and ANDREWS, JJ., not voting.
Judgment affirmed. *Page 110