THE PEOPLE OF THE STATE OF NEW YORK EX
REL. RICHARD W. G. WELLING, RESPONDENT, *v.*
ALEXANDER MEAKIM AND OTHERS, AS COMMISSIONERS
OF EXCISE, APPELLANTS.

*Excise commissioners — compelled by* mandamus *to act and decide upon a complaint against a saloon-keeper for a violation of the statute.*

A *mandamus* may properly issue against a board of commissioners of excise, commanding them to decide a complaint, the evidence in regard to which has been presented to them, against a saloon-keeper charged with a violation of the statute forbidding the keeping open of his saloon on election day.

Any citizen has a right to apply for a *mandamus* in such a case, as the duty imposed by the statute upon the Commissioners of Excise is a public duty.

*Semble,* that this is particularly so in the case of the Commissioners of Excise of the City of New York, as that board is required to act "upon the complaint of any resident" of the city.

The Board of Commissioners of Excise is bound not only to hear the witnesses upon both sides but to decide upon the complaint; and they are not at liberty to decline to act upon a case, except when "they shall have become satisfied" that the accused person has violated the statute.

Their failure to act is not proof that they have not become satisfied.

When the facts are undisputed, the question as to what is a reasonable time within which action should be taken by a public board is usually one of law.

APPEAL by the defendants, the Commissioners of Excise of the City of New York, from an order made and entered in the above-entitled proceedings on the 14th day of April, 1890.

The order appealed from directed that a peremptory writ of *mandamus* issue directed to the Excise Commissioners of the City of New York, commanding them to decide a proceeding before them, which was instituted to procure the revocation of a license to sell liquor held by one Scheuplein.

*Edward Browne*, for the appellants.

*L. L. Delafield*, for the respondent.

VAN BRUNT, P. J.:

This is an appeal from an order granting a peremptory *mandamus* against the Commissioners of Excise of this county, directing them to decide a certain complaint presented to them by the relator against one Scheuplein.

The relator presented this complaint on the twenty-seventh of last January; it was for keeping open a saloon upon election day in violation of the statute. Notice was given to Scheuplein and the matter was set down for hearing upon the twelfth of the following February. Upon the latter date the board adjourned the hearing, although the relator was ready to proceed, to the twenty-first of February, when it was again adjourned (the relator being still prepared to proceed) to the twenty-eighth of February. On the twenty-eighth of February the hearing took place. Two witnesses testified that Scheuplein's saloon, which was but 229 feet from a neighboring polling place, was open on the last general election day and that beer was then and there sold. This was not denied, though Scheuplein was examined and testified that he knew nothing about this violation of law, and that he left orders not to sell anything over the bar that day. Upon these very simple facts the case was closed and left with the board for decision. Subsequently the commissioners were repeatedly called upon for a decision, but without avail; and as late as the eighth of April they informed a person, who applied to them upon behalf of the City Reform Club, of which the relator is treasurer, that "there was no decision."

Upon this state of facts the *mandamus* was granted simply to set the board in motion. The appeal was submitted, and the first point which we find in the appellants' brief is that "the power to revoke licenses is a purely discretionary power lodged in the Commissioners of Excise, and, therefore, *mandamus* will not lie to compel them to exercise, or to refuse to exercise, such discretion." This point, although elaborately considered and enforced by the citation of numerous authorities, seems to us to have no bearing upon the real question presented by this appeal, and for the sufficient reason that there was no attempt on the part of the Special Term to interfere with the discretion or judgment of the board. The *mandamus* required the board to exercise its discretion and judgment, and required nothing else. The rules on this subject are well settled. Where the duty is peremptory or absolute the writ may require the doing of a specific act. Where, however, official discretion and judgment are involved the writ will only command the board to act. It will not direct the board to act in a specific manner, nor attempt to control its judgment. Even in the case of inferior

courts, *mandamus* lies to compel them to proceed with the trial of causes which they have delayed without sufficient reason (High on Extraordinary Remedies, § 250); and the author adds (§ 251, citing numerous cases) that "the rule may now be regarded as well established that *mandamus* lies in all cases to compel an inferior court to proceed to the trial of a cause, and to set it in motion, when it has *unreasonably delayed the proceedings*, or where its refusal to proceed amounts to a denial of justice." (See, also, §§ 147, 148, and 3 Black. Com., 111.) The cases in this and other States are numerous where ministerial officers, clothed with quasi-judicial powers, have thus been set in motion, although the court have scrupulously avoided interfering with the manner in which the discretionary duty should be performed.

The learned counsel for the appellant evidently misapprehends the language of Emott, J., in *People ex rel. Belden* v. *Contracting Board* (27, N. Y., 378, quoted and disallowed in *People ex rel. Duff* v. *Booth*, 49 Barb., 31, and *People ex rel. Livingston* v. *Taylor*, 1 Abb. Pr. [N. S.], 200). The learned judge there observed that to entitle the relator to a *mandamus* "there must be a clear legal right, not merely to a decision in respect to the thing sought, but to the thing itself." That language had reference to a case where the *mandamus* was granted to compel the thing sought, not merely to compel a decision. Plainly what was meant was, that the mere right to a decision did not involve the right to a decision in a particular way. The language does not convey the idea that where there is a right to a decision of some kind, a *mandamus* will not lie to compel such decision. Such a doctrine would be contrary to the entire current of authority in this country and in England.

The appellant's second point is that no right existed in the relator, either individually or as a citizen, to a judicial determination of any question by the Commissioners of Excise. This proposition overlooks the fact that it is a public duty which is sought to be here enforced, and that, as was observed by Mr. Justice Daniels, in *People ex rel. Boltzer* v. *Daley* (37 Hun, 461), "all citizens are equally concerned in securing its performance." (See the cases and treatises cited in that opinion.) It also overlooks the fact that under the statute the board is required to act "upon the complaint of any resident" of the city, and that the present relator, as such resident,

was the complainant in the case charged to have been unreasonably delayed. The precise point was decided by Mr. Justice Lewis, in the *People ex rel. Sickles* v. *Becker* (3 N. Y. St. Rep., 202), and we concur in his conclusion on that head.

It is also urged that the board was not bound to act upon the complaint further than to examine the witnesses on both sides; that is, if we understand the learned counsel, to hear the case and not decide it. This is a strange proposition, and if correct it would lead to a strange perversion of the legislative intent. The act reads as follows:

"The board of excise of any city, town or village, may, at any time, and upon the complaint of any resident of said city, town or village, shall summon before them any person or persons licensed as aforesaid ; and if they shall become satisfied that any such person or persons has or have violated any of the provisions of this act, or of the acts hereby amended, they shall revoke, cancel and annul the license of such person or persons, which they are hereby empowered to do, and where necessary, to enter upon the premises and take possession of and cancel such license. Upon an inquiry the said board, or the party complained of, may summon, and the said board may compel, the attendance of witnesses before them and examine them under oath." (Laws 1870, chap. 175, § 8, as amended by Laws 1873, chap. 549, § 4.)

Taking this literally, the appellants contend that they are only bound to act when "they shall have become satisfied" that the accused person has violated the act, and that their non-action is proof conclusive that they have not become satisfied. The difficulty with this position, and it is not the only difficulty, is that the statute contemplates the satisfaction *of the board*, and that the absence of such satisfaction on the part of the board cannot be predicated of non-action, otherwise the law could be evaded by the failure of the board to meet. Whether the board is satisfied or dissatisfied can only be known after a consideration of the case by the board, and the taking at a meeting thereof of the sense of its members. But the entire provision plainly contemplates a summary trial. (*People ex rel. Kimball* v. *Haughton*, 41 Hun, 560; *People* v. *Schewe*, 29 id., 124; *People ex rel. Presmeyer* v. *Commissioners*, 59 N. Y., 96.)

Upon the complaint of the resident a summons must be issued and served upon the accused. The board or the accused may thereupon summon or compel the attendance of witnesses and examine them under oath, and the proceeding is styled an "inquiry." Such an inquiry must have a definite result. It would be the height of absurdity to go through all the machinery of a trial, and then and there let the whole matter rest without any consideration by the board, the complaint being treated as thus fully disposed of and the case decided.

Such a construction would be as dangerous to the accused as it would be injurious to the public. The non-action of the board could be continuously and indefinitely held over the head of the accused. He would never know the day or the hour when the rod of affirmatively expressed satisfaction as to his guilt might be laid upon him. He would be completely in the power of the board, and the grossest oppression, personal or political, might be practiced upon him. Upon the other hand, of what avail to the people would be the complaints of public-spirited citizens, residents of the city, seeking to enforce the law for the benefit of all, if such complaints are deemed to be legally passed upon by contemptuous silence?

In our judgment it was the plain intent of the legislature, as expressed in this act, that after hearing all the testimony the board, *as a board*, should consider such testimony and thereupon decide by a vote of the commissioners whether the accused person has or has not violated any of the provisions of the act. If such accused person has so violated any of the provisions of the act, the duty to revoke the license is imperative. In that case, to quote the language of the act " they *shall* revoke, cancel and annul the license." And this duty cannot be evaded or the rights of the people trifled with by non-action or silence.

In the *People ex rel. Funke* v. *Board of Excise* (24 Hun, 195), the court held that the duty of revoking licenses was dependent upon the board's becoming satisfied " that the licensee had violated some provision of the statute." The language used in that case involved the concession that the statute is *mandatory*, and casts upon the board the duty of revoking licenses when so satisfied of a violation of some provision of the statute.

In *People ex rel. Beller* v. *Wright* (3 Hun, 309), Hardin, J., said that the commissioners " were simply to become satisfied in their judgment and then this right, *as well as duty*, to revoke the permit which had been given the relator, was clear."

And in *People ex rel. Presmeyer* v. *Commissioners of Police* (59 N. Y., 96), Grover, J., says that the statute authorizes " an inquiry into and *determination of* the question whether the party licensed continues to be a suitable and proper person to sell intoxicating liquors." That there must be an affirmative " determination " has, in fact, never been doubted.

The remaining question is, as to whether a peremptory writ should have been granted. The appellants insist that an issue of fact on the question of unreasonable neglect was raised by the opposing affidavits, and that, consequently, the relator was only entitled to an alternative writ. It is undoubtedly true that a peremptory writ can issue only when, upon the conceded or undisputed facts, the right is dependent upon questions of law. In the present case none of the facts stated in the moving affidavits are denied, nor is new matter stated in justification, explanation or extenuation of the neglect of the board to *consider this particular case*. The commissioners deny that they have " unreasonably delayed or neglected and refused to decide or take any action upon *the complaints* so made as aforesaid by the City Reform Club," referring not to this particular case of Scheuplein, but " that, since on or about the 1st of January, 1890, numerous complaints for violation of the Excise law have been made by the said City Reform Club against persons licensed in the city of New York." As to this particular case the commissioners were charged as follows :

X. That, in violation of the provisions of law in such case made and provided, the said commissioners have unreasonably delayed, have wholly neglected and have refused to decide or take any action upon the deponent's said complaint.

The only answer to this charge is a denial of what is not directly averred, namely : " That the said board, or any of the Commissioners thereof, are unwilling or have refused to revoke the license of said Scheuplein, or any other licensee, for a violation of the law as is alleged in said affidavit. On the contrary, deponent alleges that the Board of Excise, and the Commissioners thereof, are entirely willing

to decide the said matter of Scheuplein, and all other matters brought before them."

This is clearly an admission of (by failure to specifically deny) the charge that the commissioners have " unreasonably delayed, have wholly neglected and have refused, to decide· or take any action upon" the relator's complaint.    It is simply an expression of present willingness, at the time when the affidavit was verified, to decide the case ; that is, of willingness under the stress of the proceedings. But even if the commissioners had denied the charge of unreasonable delay, they have not attempted to deny any of the facts upon which that charge was predicated.    It appears, without dispute, that Scheuplein's license was to expire on the 25th of April, 1890, yet, on the eighth of April, the case had not even been considered, although the commissioners had " often been requested so to do." Thus it appears that when the case was closed, and submitted for decision on the twenty-eighth of February, the license had fifty-eight days to run.    Forty of these fifty-eight days were permitted to pass without the slightest action, and thus, when these proceedings were commenced but eighteen days were left of the term of the license.    Under such circumstances, a denial of unreasonable neglect would simply be a denial of the self-evident conclusion that there was gross neglect, and that the commissioners, by their willful non-action, were permitting the accused to enjoy with impunity the remainder of his term.    We agree with the respondent that the facts fully justified the legal inference that the commissioners did not intend to take any action in the matter; that their delay was unreasonable, as matter of law, and equivalent to a refusal to act.

In the *People ex rel. Aspinwall* v. *Supervisors of Richmond County* (20 N. Y., 252) a judgment refusing a peremptory *mandamus* was reversed, although the claim under consideration was " not allowed nor disallowed by any formal action of the board."    JOHNSON, Ch. J., speaking of this claim, said : " It was laid aside without other action, when the duty of the board was to proceed and act upon the claim,    *    *    *    and we must hold their conduct to be equivalent to a rejection of the claim, or else leave it in the power of boards of supervisors to postpone action in all cases *till such time as they think it fit to proceed.*"

This case was followed in the *People ex rel. Wetmore* v. *Supervisors*

(2 Keyes, 291) where Porter, J., observed that it was quite evident "from the inaction and delay of the board of supervisors *as well as from the grounds on which the application for a mandamus was resisted*, that the board did not recognize its obligation to raise the moneys in question under the act of 1860. There was, it is true, no formal refusal; but we think the court below was right in holding that, under the circumstances disclosed in the affidavits, the neglect of the board was equivalent to a refusal to comply with the requisition." (See, also, *The Queen* v. *The Vestrymen*, 8 Ad. & Ell., 887; and *The Queen* v. *Commissioners*, reported as note, Id., 901.)

The case of the *People ex rel Hammond* v. *Leonard* (74 N. Y., 445), does not conflict with these cases. There the *mandamus* was not merely to set the officer in motion, and to require him to act upon his judgment, but it directed him to do the specific thing as to which he was clothed with discretion. But even there Church, Ch. J., said it was not a case of refusal to act at all, "delay is alleged and *this is explained by the defendant.*"

Where the facts are undisputed the question of what is a reasonable time is ordinarily one of law. (*Roth* v. *Buff. and State Line R. R. Co.*, 34 N. Y., 553, and cases there cited; *Hedges* v. *H. R. R. Co.*, 49 id., 225; *Davis* v. *Gwynne*, 57 id., 677.) Whether that doctrine is strictly applicable here need not be definitely decided, as not only are the facts undisputed, but also the conclusion directly charged against the commissioners with regard to this particular complaint.

Upon both the facts and the law, we think the order appealed from was right and should be affirmed, with costs.

Brady, and Daniels, JJ., concurred.

Order affirmed, with costs.