COMPTON *v.* THE CHELSEA.

(*Supreme Court, General Term, First Department.* February 13, 1891.)

RIGHTS OF STOCKHOLDERS—RATIFICATION.

The prospectus of an apartment house corporation stated that the owner of a certain amount of stock would be entitled to a virtually perpetual lease of an apartment. C. subscribed for 70 shares, sufficient to entitle him to a certain apartment, which was assigned to him; and by agreement the certificate of stock was issued to V. At a meeting of stockholders the plan of the building was changed, and the amount of capital stock was increased, the additional stock being distributed among the stockholders without anything being paid therefor. Before such distribution the stockholders resolved that an annual rent should be charged stockholders, and leases should be executed by them on that basis, V. voting therefor as holder of the

70 shares, which stood in his name, though he had previously sold them to plaintiff. Thereafter plaintiff surrendered the certificate issued to V., and received a certificate for the original 70 shares and 67 shares of the increased stock. *Held,* that plaintiff was not entitled, by virtue of the original subscription, to the apartment without executing a lease pursuant to the resolutions. He was bound by the change of plan and the additional conditions, such change having been assented to by the then holder of his stock, and ratified by plaintiff by his acceptance of the additional stock. Distinguishing *Driscoll* v. *Manufacturing Co.,* 59 N. Y. 96.

Appeal from circuit court, New York county.

Action by Alexander T. Compton against The Chelsea, a corporation. Plaintiff appeals from a judgment for defendant entered on a verdict directed by the court, and from an order denying a motion for a new trial. See former decision, 8 N. Y. Supp. 622. Laws N. Y. 1881, c. 589, (supplementary to the manufacturing companies act, Laws 1848, c. 40,) provides: "Any three or more persons may organize themselves into a corporation * * * for the purpose of purchasing, acquiring, maintaining, and improving real estate, for residences, homesteads, and apartment houses, to be leased and conducted by the corporations so formed, and occupied by the stockholders thereof and others. * * * The corporation so formed shall be subject to all the provisions and obligations of the act aforesaid, [manufacturing companies act,] * .* * and it shall have power to take and hold * * * such real estate as shall be necessary to carry out the objects of said corporation, and it may distribute and apportion the same, and the rent, income, and proceeds thereof, among its members and stockholders in such manner as shall be determined by its by-laws."

Argued before VAN BRUNT, P. J., and BARTLETT, J.

*Alexander T. Compton, in pro. per. Lemuel Skidmore* and *William H. Shepard,* for respondent.

VAN BRUNT, P. J. This case has been before the general term upon a previous occasion, in which it seems to have been held that this form of action may be maintained. It is not necessary to express any opinion as to the conclusion then reached, because we think that the judgment in favor of the defendant, must, in any event, be sustained. This is an action of ejectment to recover possession of a suite of rooms in an apartment house. The defendant was organized under what may be called the "Apartment House Act." The capital was fixed at $290,000, the number of shares of stock was 5,800, and the par value of the shares was $50 each. Before the organization of the company a prospectus was issued, setting forth what it was proposed to do, and the advantages which would result from subscriptions, and showing by what investment apartments might be secured. The prospectus then goes on to say that "if this be so," (namely, their calculations,) "nay, if the cost of apartments does not exceed twice the amount shown by our estimates, we claim that the great problem of how to live in New York city for people of educated tastes and refined habits, but of moderate means, is at last approaching a solution." The circular further stated that the holding of · a certain proportion of the stock would entitle the owner to a virtually perpetual lease of an apartment. Subscriptions were made, and opposite the subscriptions were placed the numbers designating the apartments which the subscribers selected. Among other subscribers was a subscription for 70 shares in the name of A. B. Cruikshank, and opposite to which was mentioned the apartment in question. By arrangement between the parties in January, 1883, a certificate for said 70 shares was issued to Thomas C. Van Brunt. In October, 1882, at a meeting of the trustees, by-laws were adopted, by which it was provided that all questions as to the purchasing of land, the character and style of buildings to be erected, and as to how and to whom and at what rent the several apartments should be leased, and as to the apportionment and distribution of the apartments among the stockholders, should be decided by

a vote of the majority of the stockholders, and not otherwise. At the same time, and after the adoption of the by-laws, the trustees adopted the prospectus aforesaid as the prospectus of the defendant. On the 14th of December, at a meeting of the stockholders, the subscribers were assigned the apartments selected by them; No. 2 on the second floor, the apartment in question, being assigned to A. B. Cruikshank. No. 2 is now numbered 21. It further appeared that the certificate issued to T. C. Van Brunt was surrendered, and a new certificate, No. 21, issued to him. These shares stood in his name, and no transfer of the stock was made to the plaintiff on the books of The Chelsea until May, 1885, although it appears that a lead-pencil mark had been made upon the books of the corporation, showing that plaintiff was the owner of this stock, which said pencil mark resulted probably from the knowledge that Van Brunt had sold this stock to the plaintiff some time in January, 1883. The defendant commenced the construction of the house early in 1883. At a meeting of the stockholders, held in December, 1882, the plan of the building was changed, whereby the cost was very much increased; and in January, 1884, the capital stock was increased from $290,000 to $500,000, such additional stock being distributed among the stockholders without anything being paid therefor. On the 23d of January, 1884, the trustees passed a resolution recommending to the stockholders at a meeting to be called thereafter that an annual rental, equivalent to 10 per cent. of the face valuation of the stock held by each on the basis of $500,000, be the rental fixed by this company to its stockholders on their respective apartments. On the 29th January, 1884, and before the distribution of the increased stock, a meeting of the stockholders was held, at which more than a majority were present, and unanimously passed resolutions—Van Brunt, the holder upon the books of the company of the 70 shares, representing apartment No. 21, being present, and voting therefor—that an annual rent equivalent to 10 per cent. of the value of the stock on the basis of an issue of $500,000 should be charged and collected from each stockholder, and that the trustees were authorized to draw up a suitable form of lease to be executed to stockholders upon said basis. In June, 1884, the trustees ordered the leases to stockholders to be executed by the president. In September, 1884, the trustees approved and adopted the form of lease. In October, 1884, the building having been completed, the plaintiff obtained the keys of the apartment assigned to him, and took possession of his apartments, and expended certain moneys on the completion of the same. On the 1st of December, 1884, the plaintiff rented the premises. On the 11th of May, 1885, the plaintiff surrendered the certificate which he had received from Van Brunt of the 70 shares, and received in lieu thereof the original 70 shares and 67 additional shares of the increased stock, for which nothing was paid, and thus became for the first time a stockholder of record in the company. In the summer of 1885 a lease of the apartments, duly executed by the president, was tendered to him. He declined not only to accept this but any lease. In October, 1886, the apartments having been vacated by the plaintiff's tenant, the defendant took possession, whereupon the plaintiff brought this action of ejectment. Upon the trial a verdict was directed for the defendant, and a motion was made for a new trial, and denied, and from the judgment and order thereupon entered this appeal is taken.

The ground upon which the plaintiff claims the right to succeed seems to be that by subscribing under the representations contained in the prospectus he became an absolute owner, and entitled to the possession of the apartment represented by the 70 shares of stock, which he now holds. This might be true if there had not been a change of plans, of organization, and of system in the carrying out of this enterprise. But it is urged that this change cannot affect the plaintiff, because he was not a party to it, and because they cannot impress an additional condition upon the stock held by him from that

which it bore at the time of its first issuance; and our attention is called to the case of *Driscoll* v. *Manufacturing Co.*, 59 N. Y. 96. This was an action to compel the defendant to transfer on its books stock purchased by the plaintiff. The defense was that the stock had formerly belonged to one Bradley, who at the time of his ownership was indebted to the defendant, and by virtue of a by-law then existing, adopted by the vote of Bradley, a transfer could not be made until the indebtedness was paid; and it was held that by a mere by-law they could not impose restrictions upon the transfer of personal property which were not authorized by the statutes. That case presents no parallel to the one at bar, because there was no inability on the part of these stock-holders to depart from the terms of the contract made by the subscription to the stock and the prospectus if they saw fit; and this was all that was done,— done with the assent of the then holder of the stock to the change, and ratified by the plaintiff, who accepted the additional stock which was the result of that change; the position of the plaintiff being that he can hold this additional stock without in any way assuming any portion of the burden which this additional stock represented. The magnitude of the enterprise was increased, and this stock was issued to represent the increase. The value of the building to be erected was much greater than was originally contemplated; and this increase in stock was intended to represent the additional moneys which had been put into the building and had been raised upon mortgages upon the property. The plaintiff claims the right, after having accepted the stock representing this increased cost, to hold his apartment upon his original subscription, in a building much more expensive in character than the one to which he had subscribed. Even if the prospectus entitled the plaintiff, as matter of right, to this apartment without the payment of any rent, he, having assented to the new arrangement by the acceptance of tl  stock, if in no other way, cannot now be heard to say that he is not bound by the proceedings of the stockholders. In the case cited, the purchaser of the stock claimed that by the by-laws of the corporation they could not impress a lien upon the stock which the statute did not authorize. In the case at bar, the plaintiff, for a consideration, having assented to the change in construction, proposes now to keep the consideration, and recall the consent. We think that plaintiff is not now in a position to claim the apartments without contributing to the additional expenses incurred by and with his consent in the construction of the building, even though he would have been entitled thereto had he not acquiesced in and received some of the benefits of the change. The judgment should be affirmed, with costs.