THE MOHAWK NATIONAL BANK of Schenectady, Appellant, *v.* THE SCHENECTADY BANK, Respondent.

*Banking association — stock impressed by charter with the indebtedness of the holder to the association, and by-laws containing a similar provision — a chose in action is assigned subject to equities.*

By the provisions of section 19 of chapter 260 of the Laws of 1838 a power is conferred upon a banking association organized thereunder to regulate, in and by the articles of association, the manner of transfer of its stock, which become its charter on being filed in the proper office. Such articles of association, with the statute under which it was authorized and created, becomes the law of the association both as between the association and its members, and as between the association and all persons dealing with its members, in all matters regulated by the charter; and where by such charter the stock issued by the association became impressed with all debts due to the bank from a stockholder, that characteristic passes with such stock, and binds not only the stock, but also each holder thereof.

The power of a banking association, organized under chapter 260 of the Laws of 1838, and the acts amendatory thereof, to incorporate in its charter a provision that its shares shall be deemed pledged and held by the association as security for the payment of all the debts and liabilities to the association, of the respective owners thereof, and that no transfer of any stock can be made until such debts and liabilities are discharged, without a resolution of the board of directors of such association assenting to such transfer, is one that has the sanction of authority; it violates no principle of sound public policy, being the exercise of a power in the issuance and control of its stock, and of its stockholders, while debtors of the bank, clearly conferred upon it by the statute under which it was formed, which is the organic law of its existence.

There is a well-recognized distinction between provisions in charters or articles of association of corporations in restraint of the alienation of their stock by their stockholders, and the imposition of such restraint in a mere by-law of the corporation; such restraint sought to be imposed by a by-law may be inoperative as against a *bona fide* purchaser of stock, while if contained in the charter or articles of association of the corporation it may be held valid.

Ordinarily the purchaser of a chose in action, not negotiable, takes it subject to all the equities existing against it in the hands of the assignor.

APPEAL by the plaintiff, The Mohawk National Bank of Schenectady, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Schenectady on the 31st day of March, 1892, upon the report of a referee.

*Alonzo P. Strong*, for the appellant.

*S. W. Jackson*, for the respondent.

MAYHAM, P. J.:

This action was prosecuted to compel the defendant to transfer upon its stock books thirty-seven shares of the capital stock of the defendant of the par value of fifty dollars per share.

The stock was held by one Paige and stood in his name upon the books of the defendant, and was represented by a certificate issued by the defendant to him on the 10th day of July, 1868.

The plaintiff claims title to the certificate and stock represented by it by virtue of a bill of sale and assignment and power of attorney executed by Paige, dated the 18th of September, 1876, claimed to have been given by Paige to the plaintiff as collateral to the renewal of an original loan by the plaintiff to him of $5,500. On the 22d of July, 1884, the plaintiff caused such assignment and power of attorney to be presented at the bank of the defendant and a demand made upon the defendant to permit a transfer of such stock upon its books from Paige to the plaintiff, which was refused by the defendant.

On the 9th day of February, 1870, Paige became indebted to the defendant in the sum of $6,100 on his promissory notes for that sum, which were discounted by the defendant, which remained unpaid, and which, with renewals and interest, amounted, at the time of the trial, to the sum of $7,013.97.

The defendant was incorporated on the 24th day of December, 1861, under and in pursuance of an act of the Legislature of New York, entitled "An act to authorize the business of banking, passed April 18, 1838, and the several acts amendatory thereof," being chapter 260 of the Laws of 1838.

Section 15 of that act prescribes the manner in which banking associations may be formed under that act by making, filing and

recording in the office of the Secretary of State articles of association as therein prescribed.

Section 18 provides that the shares of such banking association shall be transferable on the books of the association in such manner as may be agreed upon in the articles of association, and every person becoming a stockholder shall, in proportion to his share, succeed to all the rights and liabilities of prior stockholders. The articles of association formed by the defendant under this statute contained, among other things, the following provisions: "Article 9. The directors shall cause suitable books to be provided and kept for the registry and transfer of the shares of the association, and every transfer to be valid shall be made in such books, and be signed by the shareholders, or by his or her attorney, duly authorized in writing, and every transfer shall be made and taken expressly subject to all the conditions and stipulations contained in these articles.

" Article 10. The shares of the capital stock of this association shall be deemed pledged and held in security by the association for the payment of all debts and liabilities of the owners thereof to the association ; and no transfer of any stock can be made until such debts and liabilities are discharged, without a resolution of the board of directors assenting to such transfer."

It is insisted by the learned counsel for the defendant that, under the above provisions of the defendant's charter, it had a lien on the stock in question for the indebtedness of the assignor to it at the time of the assignment, and that such lien is and was valid as to the assignor, or as to any assignee to whom he might assume to transfer the same.

Section 19 of chapter 260 of the Laws of 1838, that being the law under which the defendant was incorporated, provides that "the shares of said association shall be deemed personal property, and shall be transferable on the books of the association in such manner as may be agreed on in the articles of association, and every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of prior shareholders."

Under this provision it is quite clear that the power was conferred upon the association to regulate the manner of the transfer of stock in and by the articles of association, which became its charter on being filed in the proper office, and that charter, with the statute

under which it was authorized and created, became the law of the association, both as between the association and its members and the association and all persons dealing with its members in all matters regulated by the charter.

By the charter itself the stock issued by the association became impressed with all debts due to the bank from a stockholder, and that characteristic passed with it and bound the stock not only, but each holder of the same.

In *Leggett* v. *The Bank of Sing Sing* (24 N. Y. 288) WRIGHT, J., in discussing the effect of a provision similar to the one under consideration, uses this language : " The lien unquestionably attaches in respect to the shareholders' debts when the bank is asked to transfer the legal title." In the same case ALLEN, J., who dissents from his associates on some of the questions, but agrees with them as to the effect of the charter in creating a lien in favor of the bank for debts of the stockholders, uses this language : " As an agreement in effect making the debt of the shareholder a lien upon his stock, it is not prohibited by any law, and is inconsistent neither with any statute nor with public policy. A pledge of the stock in security for the payment of a debt actually contracted would clearly be valid; and an agreement pledging it, given in advance of the debt, can be nevertheless valid."

Similar provisions in special charters granted by the Legislature are not unusual, which is high evidence that public policy sanctions them, and courts have sustained and enforced such provisions. (*Union Bank of Georgetown* v. *Laird*, 2 Wheat. 390 ; *Bank of Utica* v. *Smalley*, 2 Cow. 770.)

" Each association organized under the General Banking Law may incorporate such special powers in its articles of association, not inconsistent with the laws of the State, as the association shall think expedient, and these special provisions will have the force of law with the associates." (24 N. Y. 289, *supra.*)

The articles of association, the voluntary agreement of the associates in regulating the terms of their association and their right as members thereof, takes the place of a special charter and performs its office. It seems to follow that the power of this association to incorporate this provision in its charter is one that has the sanction of authority, and that it violates no principle of sound public policy.

It is the exercise of a power in the issuance and control of its stock, and of its stockholders while debtors of the bank, clearly conferred upon it by the statute under which the corporation was formed, which is the organic law of its existence.

It would seem to follow that, on the creation of the debt by Paige to defendant on the 9th of February, 1870, the lien of the defend-ant attached to this stock, and as the debt has not been paid, the lien has not been divested. As was said by SUTHERLAND, J., in *Bank of Utica* v. *Smalley* (*supra*) : "This provision was intended exclusively for the benefit and protection of the bank. The lien upon the stock for any debts due to them cannot be affected by a transfer of the stock." Doubtless, had this indebtedness of Paige been less in value than the stock, the plaintiff, as assignee, could, on extinguishing the lien, compel a transfer, but that is not this case. It does not seek by payment to extinguish the defendant's lien, but rather by the assertion of its claim under the assignment, and power of attorney, made long after the defendant's lien attached, seeks to hold the stock by what it asserts is a superior title. This, we think, it can-not do. This is not a case where a corporation seeks to exercise pow-ers not specifically granted to it, but rather a power which is expressly conferred by the charter granted, as we have seen, under and in accordance with the powers conferred on it by the statute, which is the organic law of its existence. It does not, therefore, come under the condemnation of any of the decisions cited by the learned counsel for the plaintiff under his second point. Nor can the lien created by this charter be denounced as a secret lien, such as the law will not uphold.

In *Driscoll* v. *West Bradley & C. M. Co.* (59 N. Y. 96) the court hold that a company could not by a by-law render the stock inalien-able by a stockholder, where the scrip of stock had nothing upon its face to show that the company retained a lien on it by its by-laws as to a purchaser who bought without notice of the lien. But that case was where there was a restraint created by a by-law and not the charter, and there was no express or implied authority either in the statute or the charter for creating such lien, and while the by-law was sufficient in terms, there was no authority in the statute under which the defendant in that case was incorporated to pass such by-laws, and the court say : "Hence, if the defendant is to maintain

this by-law, it must point out the authority either in its articles of association, and show that they are authorized by law, or in some statute."

This, we think, the defendant did in the case at bar, under the provisions of section 19 of chapter 260 of Laws of 1838, under and in pursuance of which the provision in the charter of the defendant was clearly authorized.   It seems quite apparent that there is a well-recognized distinction between provisions in the charter or articles of association in restraint of alienation of stock by a stockholder and the imposition of such restraint in a mere by-law of the corporation, and this distinction accounts for the mere fact that in some cases the courts have held that such restraint is inoperative as against a *bona fide* purchaser of the stock, and in other cases such condition in restraint of alienation is held valid.

In *Bank of Attica* v. *Manufacturers & Traders' Bank* (20 N. Y. 505) DENIO, J., in pointing out that distinction, uses this language : " And the difference between a restraint upon alienating the shares in these associations, contained in the articles which must receive the assent of all the primary shareholders, and by which all persons holding derivative interests must be bound, and a like restraint imposed by the agents of the association in the form of by-laws, which may or may not come to the knowledge of the shareholders, and which, if known, may be disapproved of by them, is very marked."

In *Driscoll* v. *West Bradley, etc. (supra)*, Judge FOLGER, while denying the power to impose such restraint of alienation by and under the provisions of the by-laws, fully recognizes the power to do so in the charter or articles of association.   He says : " There may be in some cases an agreement of the original stockholders among themselves, by their articles of association, that such power shall exist.   The latter, as we have seen, does not appear in this case."

There is nothing in the character of this stock which makes it negotiable or which invests the transferree with rights superior to those of the assignor.   Ordinarily the purchaser of a chose in action, not negotiable, takes it subject to all the equities existing against it in the hands of the assignor, and if we are right in holding that the defendant has a valid lien on this stock for the debt of Paige, his

assignment to the plaintiff cannot divest that lien or invest the assignee with greater rights than those enjoyed by the assignor. (*McCready* v. *Rumsey*, 6 Duer, 574.)

The defendant, on making the loan to the plaintiff's assignor, acquired a vested right in this stock, which cannot be divested by Paige by assignment, and the assignee of the stock took the interest of the assignor subject to that right, and cannot divest the defendant except upon payment of the defendant's lien.

Nor do we think the defendant in this case is estopped from asserting its right.

This case is clearly distinguishable from *Knox* v. *Eden Musée* (74 Hun, 483).

The judgment must be affirmed, with costs.

PUTNAM, J., concurred.

HERRICK, J. :

I concur upon the ground that the plaintiff is not a *bona fide* holder for value of the stock in question. The assignment of such stock was made to the plaintiff to secure the payment of an antecedent debt.

The plaintiff parted with nothing of value upon the faith or credit of the stock.

Upon the other questions in the case, it seems to me that the principle in the case of *Knox* v. *Eden Musée Americain Co.* (74 Hun, 483) applies.

Judgment affirmed, with costs.